UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| AASHISH KALRA, *et. al.* | ) | CIVIL NO. 3:18-CV-260 (KAD) |
| *Plaintiffs,* | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| ADLER POLLOCK & SHEEHAN P.C., | ) | January 24, 2019 |
| MICHAEL GILLERAN, | ) | |
| *Defendants.* | | |

**MEMORANDUM OF DECISION RE:**
**DEFENDANTS' MOTION TO DISMISS COUNTS TWO AND THREE (ECF NO. 26)**

Kari A. Dooley, United States District Judge

The Plaintiffs, Aashish Kalra ("Kalra"), Asia Pacific Ventures, Ltd ("Asia"), and Trikona Advisers, Limited ("TAL") (collectively, "the Plaintiffs"), bring this action against their former attorney, Michael Gilleran, and his (now former) law firm, Adler Pollock & Sheehan (collectively "the Defendants"). The Defendants represented the Plaintiffs in a series of actions litigated in both Connecticut and the Cayman Islands. In Count One, the Plaintiffs allege legal malpractice. In Counts Two and Three they assert, respectively, claims for breach of fiduciary duty and violations of the Connecticut Unfair Trade Practices Act ("CUTPA"). The Defendants have moved to dismiss Counts Two and Three on the basis that neither states a viable cause of action under Connecticut law. The Plaintiffs oppose the motion. The Court heard oral argument on January 14, 2019. For the reasons that follow, the motion to dismiss is GRANTED in part and DENIED in part.

**Standard of Review**

In deciding a motion to dismiss under Rule 12(b)(6), the Court takes as true all allegations and construes them in a light most favorable to the Plaintiffs. *Hoover v. Ronwin,* 466 U.S. 558,

1

587 (1984). To state an adequate claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when . . . plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.* "Although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (quoting *Ashcroft*, 556 U.S. at 678); *see also Amaker v. New York State Dept. of Corr. Servs.*, 435 F. App'x 52, 54 (2d Cir. 2011) (same). Accordingly, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted)). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**Factual Allegations**

The complaint's allegations, taken as true for purposes of this motion, are summarized as follows. The Plaintiffs entered into an attorney-client relationship with the Defendants in or around April 2011. Defendant Gilleram continued in this relationship until October 2015. Defendant Adler Pollock & Sheehan continued in this relationship until January 2015. During the course of the attorney-client relationship, the Defendants represented the Plaintiffs in no less than five lawsuits or appeals in state, federal and foreign courts. Prior to and during the period of representation, the Defendants told the Plaintiffs, *inter alia,* that they were experienced

commercial litigators, knowledgeable and well versed in international bankruptcy law, and highly skilled in the conduct of litigation, to include achieving prompt and favorable settlements.

Plaintiff Asia was a 50% owner of TAL, a Cayman Island entity. Plaintiff Kalra is the controlling principal of Asia. TAL was also 50% owned either by non-party Rakshitt Chugh or one of his related entities. As a result of a dispute between Kalra and Chugh, the Plaintiffs brought suit against Chugh and his related entities in this Court, Civil Action No. 11-CV-0215 (SRU). Therein, the Plaintiffs claimed that Chugh breached his fiduciary duties and pleaded related causes of action arising out of the parties' joint interest in TAL. In that litigation, a prejudgment remedy was granted and, on April 9, 2012, Chugh posted a $1 million bond in lieu thereof.

In January 2012, the Defendants rendered an opinion letter to Ravindra Chitnis and Saurabh Killa, directors of TAL, that concluded that Chugh could be removed from the TAL Board of Directors without notice and without the need to convene a Board of Directors meeting. They opined that, under TAL's Articles of Association, Chugh could be removed by a resolution in writing signed by all of the Directors, other than the director being removed. At that time, Kalra, Chugh, Chitnis, and Killa were the only directors of TAL.

The purported motive for the opinion letter and the subsequent removal by resolution of Chugh from the TAL Board of Directors was to allow TAL to be substituted as the plaintiff in the Connecticut District Court litigation, thereby requiring TAL, instead of Kalra or Asia, to pay the legal fees associated with that litigation. The ability of TAL to incur and pay those fees "vastly exceeded" the ability of either Asia or Kalra to pay.

On February 13, 2012, ARC Capital, Inc. ("ARC") and Haida Investments, Ltd. in response to the Connecticut District Court litigation, filed a Petition in the Grand Court of the Cayman Islands seeking to wind up TAL and to divide its assets between Kalra and Chugh. Asia (the entity

3

through which Kalra owned 50% of TAL), opposed the petition. In connection with the defense of the Cayman proceeding, the Defendants told the Plaintiffs that the Cayman Court proceedings can have "no effect on the U.S. proceedings," that the Judge in the U.S. proceedings "can never recognize any provisional liquidator appointed in the Cayman Proceedings," and that "Chapter 15 [of the United States Bankruptcy Code] is an absolute bar to recognition of foreign liquidators in U.S. Courts unless the recognition requirements of Chapter 15 are met."

The Defendants advised the Plaintiffs to assert Chugh's breach of fiduciary duty and related allegations as defenses to the wind up proceedings in the Cayman Court, which they did. The Cayman Court held a trial in January 2013 and rejected each of the defenses asserted by Asia. Thereafter, this Court gave preclusive effect to the findings of the Cayman Court. The Plaintiffs' litigation against Chugh and his related entities then pending in this Court were accordingly concluded on that basis. The District Court's decision was affirmed by the Court of Appeals for the Second Circuit.

Moreover, the Cayman Court "relied heavily upon what he called a 'seizure of control' that had serious adverse consequences for Mr. Chugh and the petitioners ARC Capital and Haida Investments 'because it enabled [Kalra] to misuse the company's money for his own benefit.'" The benefit referred to was the payment of the Defendants' invoices and fees. The Cayman Court ordered Kalra and Asia to pay $700,000 in costs.

In addition to these allegations, the Plaintiffs allege in Count Two that the Defendants breached their duty of loyalty to the Plaintiffs. The Plaintiffs aver that the decision to remove Chugh as a director of TAL was "clearly designed to enrich [the Defendants]" at the expense of the clients' interests, given the impact of the Cayman Court's decision. The Plaintiffs further allege that the Defendants' decision to participate in the Cayman wind up proceeding permitted

4

the Defendants to extract large amounts of legal fees "that otherwise would not have been paid had defendants advised the plaintiffs not to participate in the Cayman proceeding because of the risk that an adverse decision would preclude and defeat the Connecticut federal breach of fiduciary duty action against Chugh." The Plaintiffs further aver that the Defendants, as a result, were "guilty of self-dealing and conflict of interest when they subordinated the interests of the plaintiffs to the pecuniary and financial interest of themselves." In addition, the Plaintiffs aver that the Defendants breached their fiduciary duty by "charging exorbitant fees, churning hours needlessly, and falsely representing that they had expertise in areas of the law" at issue in the various forums.

In 2014, ARC brought a vexatious litigation claim against the Plaintiffs and the Defendants. The claims were voluntarily dismissed but refiled in 2017. The Defendants settled this dispute and Plaintiffs allege that, in so doing, the Defendants further breached their fiduciary duty because the Defendants settled the lawsuit "knowing that the Chugh parties would use those funds to bankroll continuing litigation against the plaintiffs."

As to Count Three, the CUTPA claim, in addition to the foregoing allegations, the Plaintiffs allege that the issuance of the opinion letter was part of the Defendants' entrepreneurial aspect of the practice of law insofar as it was motivated by the desire to have access to greater amounts of legal fees than they could have received from either Asia or Kalra.

They similarly argue that the decision to participate in the Cayman Court proceedings, also motivated by the legal fees it would engender, is a basis for CUTPA liability.

**Discussion**

*Count Two – Breach of Fiduciary Duty*

"[A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is

5

under a duty to represent the interests of the other." *Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 56-57 (1998). A fiduciary relationship creates: "(a) a duty of loyalty on the part of the defendant to the plaintiff, (b) an obligation on the part of the defendant to act in the best interests of the plaintiff, and (c) an obligation on the part of the defendant to act in good faith in any manner relating to the plaintiff." *Johnson v. Bank of America, N.A.,* 2016 WL 7974180 (Conn. Super. Ct. December 12, 2016).

There is no question that the attorney-client relationship imposes a fiduciary duty upon the attorney. *Id.* However, there is a significant difference between professional negligence and breach of fiduciary duty. *Id.* "Professional negligence alone . . . does not give rise automatically to a claim for breach of fiduciary duty. … [N]ot every instance of professional negligence results in a breach of that fiduciary duty." *Id.* This is because a fiduciary duty implicates a duty of both loyalty and honesty while the attorney client relationship implicates a duty of care. *Id.* Both duties can be breached of course, giving rise to liability for either professional negligence or a breach of the fiduciary duty, but the former does not necessarily implicate the latter. *Id.* Generally, the duty of loyalty and honesty are breached by conduct which amounts to self-dealing, conflict of interest and/or fraud. *Sherwood v. Danbury Hosp.,* 278 Conn. 163, 196-197 (2006) (insofar as the plaintiff did not allege "any facts that would support a claim of fraud, self-dealing, conflict of interest or the like," her claim for breach of a fiduciary duty "must fail."). As further noted by Connecticut's appellate court, "although we have not expressly limited the application of ... traditional principles of fiduciary duty to cases involving only fraud, self-dealing or conflict of interest, the cases in which we have invoked them have involved such deviations." *Di Teresi v. Stamford Health Sys., Inc.,* 142 Conn.App. 72, 94 (2013) (citations and internal quotation marks omitted); *see also Cammarota v. Guerrera,* 148 Conn. App. 743, 757 (2014) (plaintiff's claim of breach of fiduciary

6

duty against his attorney failed because plaintiff did not present sufficient evidence of conflict of interest).

In light of these and other decisions from Connecticut's appellate courts, judges of the Connecticut Superior Court have repeatedly required allegations of fraud, self-dealing and/or dishonest, immoral, or corrupt conduct on the part of an attorney in order to state a breach of fiduciary duty claim. *See Lavitt v. Meisler*, 2003 WL 21771728 (Conn. Super. Ct. July 15, 2003) ( "[w]hen the attorney's professional duty of care without any aspect of self-dealing is implicated, no actionable breach of fiduciary duty has occurred); *Orthopaedic Group v. Day Pitney*, 2011WL 4716325 (Conn. Super. Ct. Sep. 13, 2011) (without allegations of fraud, self-dealing or a conflict of interest on the part of the defendant law firm, the pleadings did not "suffice to also encompass [in addition to legal malpractice] a claimed breach of fiduciary duty"); *Nosik v. Bowman*, 2002 WL 1842662 (Conn. Super. Ct. July 12, 2002) (to adequately plead a breach of fiduciary duty, a claimant must allege facts which "implicate the morality of counsel's conduct"); *Lee v. Brenner, Saltzman & Wallman*, 2007 WL 1600052, at *3 (Conn. Super. Ct. May 24, 2007) (motion to strike granted where plaintiff failed to allege facts that establish that the defendants were either dishonest or disloyal); *Hennessey v. McManus*, 2010 WL 5030103, at *5 (Conn. Super. Ct. Nov. 8, 2010) ("to survive a motion to strike, a breach of fiduciary duty claim must allege facts that assert dishonesty, disloyalty or immorality").

Here, the Defendants argue that the breach of fiduciary duty claim is simply a re-titled negligence claim. They aver that the claim is inadequate because it fails to allege conduct that amounts to fraud, self-dealing, conflict of interest or other dishonest or immoral conduct on the part of Defendants Gilleran and Adler Pollock & Sheehan. The Court disagrees.

While some of the allegations relied upon in Count Two mirror the negligence claims in Count One, Count Two also contains allegations that, when read in the light most favorable to the Plaintiffs, implicate the Defendants' morality, honesty, and loyalty in their dealings with the Plaintiffs. The Plaintiffs allege the Defendants were dishonest and misrepresented their experience and knowledge of the law at issue in the various forums not simply at the time of engagement but *throughout the litigation*; and that said dishonesty was motivated by the desire to generate greater legal fees. They allege the Defendants needlessly churned hours on the file. They allege the Defendants employed tactical decisions that were known not to be in the clients' best interests,[1] but instead were motivated by their desire to receive legal fees. Liberally construed, these are claims of intentional malfeasance, borne of dishonesty and self-interest, as opposed to simply misfeasance. At this stage of the proceedings, these claims should proceed to discovery.

However, allegations that the Defendants breached their fiduciary duty to the Plaintiffs when they settled the lawsuit brought by ARC is not a basis upon which a breach of fiduciary duty claim can be founded. The Defendants did not represent the Plaintiffs at the time the case was refiled or settled. Although the Defendants may have had obligations to the Plaintiffs arising out of the prior attorney-client relationship, *i.e.*, under the Code of Professional Conduct, the attorney-client relationship itself, which gave rise to the fiduciary duty in the first instance, was over at that time. Where there is no attorney-client relationship, there is no standard of care or fiduciary duty

---

[1] The Plaintiffs allege that the Defendants' actions were undertaken "at the expense of the Plaintiffs" and that the Defendants "subordinated the interest of the Plaintiffs" to their own. The Court reasonably infers from these allegations that the claims include an allegation that the tactical decisions (*i.e.*, removing Chugh and participating in the Cayman proceedings) were known or believed to be not in the clients' best interests. Absent such an express or reasonably inferred allegation, mere allegation of negligent conduct for self-enrichment through legal fees is inadequate. Otherwise, every malpractice case ever brought could include a breach of fiduciary duty claim arising out of a lawyer's recognized financial interest in getting paid for his work. *See, e.g., Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Inv'rs, L.P.,* 260 Conn. 766, 783 (2003) (rejecting the use of a lawyer's financial interest as a basis to convert negligence claims to claims implicating the entrepreneurial aspects of the practice of law under CUTPA).

8

to breach. *Biller Assocs. v. Peterken,* 269 Conn. 716, 723 (2004) ("[i]t is axiomatic that a party cannot breach a fiduciary duty to another party unless a fiduciary relationship exists between them."); *see also Blonstein v. Rubenstein,* 2011 WL 3891010, at *5 (Conn. Super. Ct. July 26, 2011) (malpractice claim based upon conduct which post-dated the attorney client relationship dismissed insofar as the lawyer's duty of care did not extend beyond the end of the relationship.); *Nacholi v. Paul,* 2007 WL 4754965, at *2 (Conn. Super. Ct. Dec. 21, 2007) (breach of fiduciary duty claim dismissed because it was based upon conduct which post-dated the attorney client relationship and therefore no fiduciary duty existed). The Defendants were defending the lawsuit not on behalf of the Plaintiffs but as to their own direct liability. When a law firm is sued for conduct arising out of its representation of a former client, by that client's prior adversary, the firm must be free to defend such action however it deems appropriate - subject to, of course, its ethical obligations to the prior client. The Plaintiffs have cited no authority to the contrary.

*Count Three – CUPTA*

It is well-established that although CUTPA can apply to the conduct of attorneys, only attorney conduct that implicates "the entrepreneurial aspects of the practice of law" falls within the statute's reach. *Suffield*, 260 Conn. at 781; *Haynes v. Yale-New Haven Hospital,* 243 Conn. 17, 34 (1997); *Heslin v. Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 521 (1983). The question is whether the complaint alleges improper conduct as part of the attorney's professional representation of a client, or improper conduct which falls within the entrepreneurial aspect of practicing law. *Id.* The Connecticut Supreme Court instructs:

> [T]he 'entrepreneurial' exception is just that, a specific exception from CUTPA immunity for a well-defined set of activities advertising and bill collection, for example. See *Haynes v. Yale-New Haven Hospital,* 243 Conn. 17, 34-38 (1997) (reasoning that practice of law and medicine may give rise to CUTPA claims only for entrepreneurial aspects, such as solicitation of business and billing, and not for claims involving issues of competence and strategy.). It is not a catch-all provision

9

> intended to subject any arguably improper attorney conduct to CUTPA liability. Therefore, the mere fact that the actions of the attorney and the law firm might have deviated from the standards of their profession does not necessarily make the actions entrepreneurial in nature.

*Suffield*, 260 Conn. at 782.

An allegation, such as the one made here, that the attorney's conducted was motivated by personal greed does not bring the conduct at issue within the parameters of CUTPA. *Id.* at 783. "Many decisions made by attorneys eventually involve personal profit as a factor, but are not considered part of the entrepreneurial aspect of practicing law. … Using an attorney's financial consideration as a screening mechanism for separating professional actions from entrepreneurial ones would dissolve the distinction between the two, subjecting attorneys to CUTPA claims for any decision in which profit conceivable could have been a factor. Accordingly, we reject such an interpretation." *Id.*[2]

The Plaintiffs' also cite the Defendants' conduct in holding themselves out as experienced in certain areas of the law, when, they allege, they were not. This type of purported "deceptive advertising" has been construed by the Connecticut Supreme Court as simply a representation that the professional is licensed and "impliedly that they will meet the applicable standards of care. If they fail to meet the standard of care and harm results, the remedy is not one based upon CUTPA, but upon malpractice." *Janusauskas v. Fichmen,* 264 Conn. 796, 810 (2003). Although "aggressive marketing" by a professional is entrepreneurial in nature, *id.,* the allegations here do not implicate such marketing practices.

---

[2] As noted by the Connecticut Supreme Court, the commentary to Rule 1.7 of the Rules of Professional Conduct implicitly recognizes the tension between a lawyer's financial interest and the lawyer's obligation to the client by providing that a layer's interest should not be permitted to have an adverse effect on the representation of the client. *Id.* Although the Plaintiffs have alleged conduct that implicates a violation of this Rule, such a violation does not trigger CUTPA liability. Indeed, violations of the Code of Professional Conduct do not of themselves give rise to civil liability. *Noble v. Marshall*, 23 Conn. App. 227, 231 (1990).

Finally, allegations of intentional misconduct, to the extent such claims are included here in the performance of an attorney's responsibilities, are also exempted from CUTPA's reach. *Suffield*, 260 Conn. at 784.

For all of the foregoing reasons, the Defendants' Motion to Dismiss is DENIED as to Count Two and GRANTED as to Count Three.

**SO ORDERED** at Bridgeport, Connecticut, this 24th day of January 2019.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE