# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AASHISH KALRA, | : | |
| ASIA PACIFIC VENTURES, LTD., | : | |
| TRIKONA ADVISERS LIMITED, | : | |
| | : | CASE NO 3:18-cv-00260-KAD |
| Plaintiffs | : | |
| | : | |
| vs. | : | |
| | : | |
| ADLER POLLOCK & SHEEHAN, P.C., | : | |
| MICHAEL GILLERAN, | : | |
| | : | |
| Defendants. | : | FEBRUARY 7, 2019 |
| _____ | : | |

## ANSWER, DEFENSES, AND COUNTERCLAIMS

Defendants Adler Pollock & Sheehan, P.C. ("APS") and Michael Gilleran ("Gilleran") hereby respond to Plaintiffs Aashish Kalra ("Kalra"); Asia Pacific Ventures, Ltd. ("Asia Pacific"); and Trikona Advisers Limited's ("Trikona") Amended Complaint dated June 5, 2018.

## ANSWER

Defendants answer the allegations of the amended complaint as follows:

### JURISIDICTIONAL STATEMENT

This Court has diversity jurisdiction over these state law claims under 28 U.S.C. § 1332(a)(l) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different states.

**Answer:**     Admitted.

### THE PARTIES

1.     Plaintiff Aashish Kalra (hereinafter referred to as "Kalra") is a resident of Westport, Connecticut. At all times relevant to this Complaint, Kalra individually and as a director of Trikona was a client of the defendants Adler, Pollock & Sheehan, P.C., and Michael

Gilleran which defendants represented Kalra in connection with litigation in the federal and state courts of Connecticut, the Grand Court of Cayman and the Cayman Islands Court of Appeals and New York.

**Answer:**       Defendants lack knowledge and information sufficient to admit or deny that Kalra is a Connecticut resident. Defendants admit that Kalra was a client of APS and Gilleran and that APS and Gilleran represented Kalra in certain matters. Defendants deny the remaining allegations of this paragraph.

2.       Plaintiff Asia Pacific Ventures, Ltd. (hereinafter referred to as "Asia Pacific") is a Panamanian company and at all times relevant to this complaint, was a client of the defendants Adler Pollock & Sheehan PC and Michael Gilleran in the federal and state courts of Connecticut, the Grand Court of Cayman, Cayman Islands Court of Appeals and New York.

**Answer:**       Defendants admit that Asia Pacific was a client of APS and Gilleran and that APS and Gilleran represented Asia Pacific in certain matters. Defendants lack knowledge and information sufficient to admit or deny Asia Pacific's incorporation status. Defendants deny the remaining allegations of this paragraph.

3.       Plaintiff Trikona Advisers, Limited (hereinafter referred to as "TAL or Trikona") is a Cayman corporation incorporated under the laws of the Cayman Islands with a principal place of business in New Delhi, India and at all times relevant to this complaint, was a client of the defendants Adler Pollock & Sheehan PC and Michael Gilleran in the federal and state courts of Connecticut, the Grand Court of Cayman, the Cayman Islands Court of Appeals and New York.

**Answer:**       Defendants admit that Trikona was a client of APS and Gilleran and that APS and Gilleran represented Trikona in certain matters. Defendants lack knowledge and

2

information sufficient to admit or deny Trikona's incorporation status or principal

place of business. Defendants deny the remaining allegations of this paragraph.

4.       Defendant Adler, Pollock & Sheehan P.C. (hereinafter referred to as "APS") is

professional corporation organized under the laws of the State of Rhode Island with offices in

Boston, MA, Providence, RI, Newport, RI and Manchester, NH and at all times relevant to this

Complaint had an attorney-client relationship with plaintiffs Kalra, Asia Pacific and Trikona.

**Answer:**       Defendants admit that APS is a professional corporation organized under the laws

of Rhode Island. Defendants admit that APS has offices in Boston, Providence,

Newport, and Manchester. Defendants admit that at certain times APS had an

attorney-client relationship with Kalra, Asia Pacific, and Trikona. Defendants

deny any remaining allegations of this paragraph.

5.       Defendant Michael Gilleran is a resident of Wellesley, MA and was at all times

relevant to the allegations of this Complaint a shareholder, partner, employee and agent

authorized to act as an attorney by the defendant Adler, Pollock & Sheehan PC in the

representation of the plaintiffs Kalra, Asia Pacific and Trikona during the course of litigation in

the State of Connecticut, in both federal and state courts, the Cayman Islands; specifically the

Grand Court of Cayman and the Cayman Islands Court of Appeals and New York where the

defendants Adler, Pollock & Sheehan, P.C. and Michael Gilleran provided legal representation to

the plaintiffs.

**Answer:**       Defendants admit that Gilleran is a resident of Wellesley, Massachusetts.

Defendants admit that Gilleran was once a shareholder of APS. Defendants admit

that while a shareholder at APS, during certain times, Gilleran represented Kalra,

3

Asia Pacific, and Trikona. Defendants deny the remaining allegations of this
paragraph.

## STATEMENT OF FACTS

6.     In or about April 2011 the plaintiffs did enter into an attorney-client relationship
with defendants Adler Pollock & Sheehan PC and Michael Gilleran.

**Answer:**     Defendants admit that APS and Gilleran entered an attorney-client relationship
with Kalra and Asia Pacific in early 2011. Defendants deny the remaining
allegations of this paragraph.

7.     Plaintiffs' attorney-client relationship with defendant Michael Gilleran continued
through October 2015, and the attorney-client relationship with defendant Adler Pollock &
Sheehan PC continued through the month of January 2015.

**Answer:**     Denied.

8.     At all times relevant to this Complaint, the defendants Adler Pollock & Sheehan
PC and Michael Gilleran did provide legal services and advice to the plaintiffs upon which the
plaintiffs reasonably relied (a) prior to the commencement of litigation by the defendants in
behalf of the plaintiffs, (b) during the course of litigation in state and federal courts in
Connecticut, the Grand Court of Cayman, the Cayman Islands Court of Appeals, and New York
and (c) all issues arising out of the litigation as hereinafter set forth in the following cases; (1)
*Asia Pacific and Trikona Advisers Limited vs. Chugh, et al; Trikona Advisers Limited vs. Chugh,
et al* (also docket no. 11 CV 2015) and (2) the initial filings of Notices of Appeal and motions for
stay in the United States Court of Appeals for the Second Circuit, docket no. 14-975CV; (3)
*Trikona Advisers Limited vs. Haida Investments Ltd., et al,* docket no. HHD-CV12-6030347-S in
the Hartford Judicial District – Complex Litigation docket, (4) *ARC Capital, LLC, et al vs.*

4

*Trikona Advisers Limited and Aashish Kalra,* docket no. HHD-CV-14-6047993-S on the
Complex Litigation docket in the Superior Court for the Hartford Judicial District and (5) in the
matter of Trikona Advisors *Limited; ARC Capital LLC and Haida Investments, Limited vs. Asia
Pacific Limited,* FSD 18 of 2012 (AJJ) in the Grand Court of the Cayman Islands – Financial
Services Division and (5) certain litigation in the State of New York.

**Answer:**    Defendants admit that APS and Gilleran provided certain legal services to Kalra,
Asia Pacific, and Trikona. Defendants deny the remaining allegations of this
paragraph.

9.    Prior to and during the course of their representation of plaintiffs, the defendants
Adler Pollock & Sheehan PC and Michael Gilleran did represent to the plaintiffs that they were
experienced litigators in commercial matters, that they were experts in conducting federal and
state commercial litigation in Connecticut (notwithstanding that defendant Gilleran was not
admitted to practice in Connecticut), that the defendants were knowledgeable and well versed in
international bankruptcy law including Chapter 15 of the U.S. Bankruptcy Code, and that they
were experienced in and highly skilled in the conduct of Connecticut State and federal Litigation
and skilled in achieving prompt favorable settlements. As a result of these representations the
plaintiffs entered into and continued to maintain an attorney-client relationship with the
defendants and to pay the defendants approximately $2.5 million dollars for legal services.

**Answer:**    Denied.

### COUNT ONE – LEGAL MALPRACTICE

1–9.    The allegations set forth in paragraphs 1–9 are hereby realleged as if fully set
forth as paragraphs 1–9 of this Count One.

**Answer:**    The above answers to paragraphs 1–9 are incorporated by reference.

5

10.     The defendants Adler Pollock & Sheehan, PC and Michael Gilleran did fail to render professional services exercising that degree of skill and learning that should have been applied by a prudent reputable member of the profession under all the circumstances in the community and in the fields of law for which defendants were retained and represented plaintiffs Kalra, Asia Pacific and Trikona in the following respects:

**Answer:**     Denied.

a)     On December 28, 2011 the defendants brought a derivative claim in behalf of Asia Pacific Ventures, Ltd. against Rakshitt Chugh and his related entities and partnerships in the United States District Court for the District of Connecticut alleging breach of fiduciary duty, theft of trade secrets and conversion (Docket No: 1l-CV-02015(SRU).

**Answer:**     Defendants admit that on behalf of their clients they filed Case No. 3:11-cv-02015 in the District of Connecticut and refer to the pleadings in that case, which speak for themselves.

b)     A prejudgment remedy was ordered by the Honorable Mark Kravitz to whom the Connecticut federal case was assigned. In lieu of that prejudgment remedy, Chugh posted a $1 million dollar bond on April 9, 2012 (ecf 98).

**Answer:**     Defendants admit that Chugh posted a bond in the amount of $1 million on April 9, 2012, and refer to the pleadings in that case, which speak for themselves. Defendants deny the remaining allegations of this paragraph.

c)     As early as January 2, 2012 defendants Gilleran and APS were promoting the idea of removing Chugh from the Board of Directors of TAL without notice as lawful and appropriate.

**Answer:**     Denied.

6

d)       On January 7, 2012 defendant Michael C. Gilleran as Shareholder and Partner of

Adler, Pollock & Sheehan, PC (hereinafter "APS") did render a formal opinion letter directed to

Ravindra Chitnis and Saurabh Killa who were Directors of Trikona Advisers Limited

(hereinafter "TAL") in which the defendants Gilleran and APS stated that "it is the opinion of

this Firm that a reasonable interpretation…of the Articles of Association of Trikona Advisers

Limited (hereinafter "TAL") together, would be that: a Director of TAL can be removed as a

Director by a resolution in writing signed by all the other Directors, other than the Director being

removed, in lieu of a duly convened and held meeting of the Directors".

**Answer:**       Defendants refer to the letter dated January 6, 2012, which speaks for itself.

Defendants deny any remaining allegations of this paragraph.

e)       At the time the opinion letter was presented to Directors Chitnis and Killa, the

only other remaining Directors were plaintiff Kalra and Rakshitt Chugh. The issue was whether

in light of Chugh's breach of fiduciary duties toward TAL and Kalra he could be removed as a

Director only with Notice or without Notice.

**Answer:**       Defendants admit that in January 2012 Aashish Kalra, Ravindra Chitnis, Saurabh

Killa, and Rakshitt Chugh were the directors of Trikona. Defendants deny the

remaining allegations of this paragraph.

f)       The defendants unequivocally opined that Chugh could be removed without

Notice and without the convening of a meeting of the Directors of TAL. The defendants rendered

this opinion so that plaintiff Trikona could be substituted as plaintiff in lieu of Asia Pacific

Ventures, Ltd, to enable the defendants to be paid legal fees that vastly exceeded the ability of

either Asia Pacific or Kalra to pay.

**Answer:**       Denied.

7

g)      After TAL's board removed Chugh based upon the opinion of defendants Gilleran and APS that Chugh could be removed from the Board of TAL without Notice, TAL took over the Connecticut litigation and asserted causes of action sounding in breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unfair competition, theft of trade secrets, civil conspiracy, conversion, statutory theft, unjust enrichment, and abuse of process.

**Answer:**      Denied.

h)      On February 13, 2012, ARC Capital, Inc. and Haida Investments, Ltd., in response to the Connecticut federal litigation, filed a Petition in the Grand Court of the Cayman Islands, seeking to "wind-up" plaintiff TAL, a Cayman corporation. The suit sought to liquidate the business and divide its assets between Chugh and Kalra. Asia Pacific, which held Kalra's TAL shares, opposed Chugh's petition.

**Answer:**      Defendants admit that on February 13, 2012, ARC Capital, Inc. and Haida Investments, Ltd., filed a Petition in the Grand Court of the Cayman Islands and refer to the Petition, which speaks for itself. Defendants deny the remaining allegations of this paragraph.

i)      On February 29, 2012 defendants Gilleran and APS notify Cayman co-counsel that all decision-making and the bulk of the work on the Cayman matter would be done by the defendants, as counsel to TAL on its many matters.

**Answer:**      Defendants admit that on February 29, 2012, Gilleran wrote an e-mail to Cayman co-counsel and refer to that e-mail, which speaks for itself. Defendants deny the remaining allegations of this paragraph.

j)      The ignorance of the law on the part of the defendants Gilleran and APS was on full display when on April 17, 2012 defendants Gilleran and APS write to Saurabh Killa and

plaintiff Kalra presenting their legal opinion that Chapter 15 of the U.S. Bankruptcy Code bars

U. S. Courts from recognizing foreign insolvency proceedings if the debtor company neither has

its main business in the country where the foreign insolvency proceedings are pending nor has at

least a permanent office there. "If we prevail on our argument on Chapter 15, then the U. S.

Judge in the U.S. proceedings can never recognize any provisional liquidator appointed in the

Cayman proceedings and the Cayman proceedings can have no effect on the U.S. proceedings.

Also, if the U.S. Judge accepts our argument on Chapter 15, it is unlikely that he will order any

stay of the U.S. proceedings.

**Answer:**     Defendants admit that Gilleran sent an e-mail dated April 17, 2012, and refer to

that e-mail, which speaks for itself. Defendants deny the remaining allegations of

this paragraph.

k)     As of April 19, 2012 Gilleran states "Thus, Chapter 15 is an absolute bar to

recognition of foreign liquidators in U.S. Courts unless the recognition requirements of Chapter

15 are met…".

**Answer:**     Defendants admit that Gilleran sent an e-mail dated April 19, 2012, and refer to

that e-mail, which speaks for itself. Defendants deny the remaining allegations of

this paragraph.

l)     On April 26, 2012 Gilleran writes to plaintiff Kalra stating that "the Cayman

action was only interdictory and it has failed for now".

**Answer:**     Defendants admit that Gilleran sent an e-mail dated April 26, 2012, and refer to

that e-mail, which speaks for itself. Defendants deny the remaining allegations of

this paragraph.

m)      Rather than assume the responsibility and the blame for placing the plaintiffs in such a legally precarious position, on April 30, 2012, defendants Gilleran and APS e-mail Cayman co-counsel and ask "why did you not tell us about Chapter 15 as soon as ARC/Haida filed their Petition in the Cayman Islands?"

**Answer:**      Defendants admit that Gilleran sent an e-mail dated April 30, 2012, and refer to that e-mail, which speaks for itself. Defendants deny the remaining allegations of this paragraph.

n)      In response to the defendants' amazing display of ignorance and blame shifting, on May 2, 2012 Cayman co-counsel writes to defendant Gilleran and APS that "it is absurd to suggest that we as Cayman qualified attorneys should have advised you on the existence of and provisions of a U.S. statute (which it appears you as a U.S. qualified attorney only discovered on 4 April). It is clearly your duty as U.S. Attorneys to advise on issues of U.S. law and we do not accept any responsibility in this regard".

**Answer:**      Defendants admit that Gilleran received an e-mail dated May 2, 2012, from Cayman counsel and refer to that e-mail, which speaks for itself. Defendants deny the remaining allegations of this paragraph.

o)      On August 16, 2012 defendant Gilleran writes to Cayman co-counsel and plaintiff Kalra reiterating his view that Chapter 15 absolutely bars U.S. recognition of a Cayman judgment.

**Answer:**      Defendants admit that Gilleran sent an e-mail dated August 16, 2012, and refer to that e-mail, which speaks for itself. Defendants deny the remaining allegations of this paragraph.

p)      As early as August 17, 2012 defendants Gilleran and APS expressed their opinion that the Cayman litigation was under control; that Asia Pacific would get a stay or the buy-out and if liquidators were appointed by the Cayman Court "we will use Chapter 15 to block them".

**Answer:**      Defendants admit that Gilleran sent an e-mail dated August 17, 2012, and refer to that e-mail, which speaks for itself. Defendants deny the remaining allegations of this paragraph.

q)      On October 9, 2012 plaintiff Kalra writes to Gilleran asking "why aren't we just focused on expediting the trial in the USA. Did you speak with the Clerk. If we have a strong case let's focus on that and expedite it.

**Answer:**      Defendants admit that on October 9, 2012, Kalra wrote an e-mail to Gilleran and refer to the e-mail, which speaks for itself. Defendants deny the remaining allegations of this paragraph.

r)      During the course of the wind-up proceeding the defendants Gilleran and APS advised the plaintiffs to allege Chugh's breach of fiduciary duty which was the affirmative action in the Connecticut federal litigation as a jurisdictional defense, arguing that if anyone of these allegations were true, Chugh would be precluded from invoking the Cayman Court's equitable jurisdiction under the Doctrine of Unclean Hands.

**Answer:**      Defendants admit that a jurisdictional defense was raised by Asia Pacific's counsel in the Cayman proceedings and refer to the pleadings in that case, which speak for themselves. Defendants deny the remaining allegations of this paragraph.

s)      The Cayman Court conducted a trial in January 2013, which preceded any trial of the Connecticut affirmative litigation brought by plaintiff Asia Pacific and Trikona, at the

11

conclusion of which the Cayman Court rejected each of Asia Pacific's affirmative jurisdictional defenses which, if any one of these defenses were accepted by the Cayman Court, would have precluded Chugh from invoking the Cayman Court's equitable jurisdiction under the Doctrine of Unclean Hands.

**Answer:**     Defendants admit that in the *ARC Capital LLC v. Asia Pacific Limited* action, the Cayman Court conducted a trial in January 2013 and refer to the pleadings, which speak for themselves. Defendants deny the remaining allegations of this paragraph.

t)     Although no U.S. Court had conducted a trial on the merits, the U.S. District Court and the Second Circuit Court of Appeals gave preclusive effect to issues decided in the January 31, 2013 decision of the Grand Court of Cayman winding-up TAL in favor of ARC Capital and Haida under the Doctrine of Collateral Estoppel or Issue Preclusion which completely defeated plaintiff's affirmative claims of breach of fiduciary duty against Chugh and his entities in the Connecticut federal litigation.

**Answer:**     Defendants admit that on April 1, 2014, the U.S. District Court for the District of Connecticut entered a judgment, which speaks for itself. Defendants admit that on January 18, 2017, the Second Circuit affirmed the District of Connecticut's judgment. Defendants deny the remaining allegations of this paragraph.

u)     The defendants Gilleran and APS knew or should have known that collateral estoppel is a doctrine that prohibits the re-litigation of an issue when that issue is actually litigated and necessarily determined in a prior action between the same parties upon a different claim.

**Answer:**     Denied.

12

v)     The defendants Gilleran and APS knew or should have known that collateral estoppel does not permit re-litigation of a decision decided against a party in a prior proceeding if: (l) it was fully and fairly litigated in the first action; (2) it was actually decided; and (3) the decision was necessary to the judgment.

**Answer:**     Denied.

w)     When the wind-up petition of TAL was filed in Grand Cayman by Chugh's entities, ARC Capital and Haida Investments, Ltd., the defendants Gilleran and APS advised that Asia Pacific, the respondent in the Cayman wind-up proceeding, should defend against the wind-up proceeding and did advise plaintiffs Kalra, Asia Pacific and TAL that the wind-up petition should be defended on the merits in a foreign jurisdiction, thus providing a basis for U.S. Courts to hold that the issues raised in the Connecticut federal litigation by Asia Pacific and TAL were fully and fairly litigated in the Cayman action which was tried before any trial occurred in the Connecticut federal litigation.

**Answer:**     Denied.

x)     In his decision granting the wind-up of TAL on January 31, 2013, Judge Jones of the Grand Court of Cayman relied heavily upon what he called a "seizure of control" that had serious adverse consequences for Mr. Chugh and the petitioners ARC Capital and Haida Investments "because it enabled him [Kalra] to misuse the company's money for his own benefit". That benefit was the payment of legal fees to the defendants Gilleran and APS who were the ultimate beneficiaries of Chugh's removal as a Director.

**Answer:**     Denied.

y)     These decisions by defendants Gilleran and APS to remove Chugh as a TAL director without Notice and to fully participate in the Cayman litigation were the cause in fact

13

and the proximate cause of the complete defeat of Trikona and Asia Pacific's causes of action for breach of fiduciary duty against Chugh in the Connecticut litigation. These defendants advised and directed that Asia Pacific actively participate in the Trikona wind-up proceeding which created an unreasonable risk of harm to plaintiffs Kalra, Asia Pacific and Trikona resulting in the loss of Trikona's and Asia Pacific's causes of action for breach of fiduciary duty in the Connecticut federal litigation, the payment by the plaintiffs of unreasonable and unnecessary fees related to the Cayman litigation and the resulting summary judgment in Connecticut.

**Answer:**      Denied.

z)      Defendants failed to advise plaintiffs Kalra, Asia Pacific and Trikona of the consequences of full participation in the Cayman proceedings, and as a proximate and direct result, plaintiffs Asia Pacific and Kalra have now been sued to enforce a Costs Order in the amount of $700,000 with interest for a total exceeding $1 million dollars, have been deprived of any value stemming from the ownership by Asia Pacific of 50% of TAL and the ownership by Kalra of plaintiff Asia Pacific, the complete loss of the Connecticut breach of fiduciary duty action against Chugh and his entities, all of which was caused in fact by the malpractice and erroneous advice of the defendants. In addition, plaintiffs have been compelled to pay more than $2 million dollars in legal fees and costs to defendant Gilleran and APS.

**Answer:**      Denied.

11.      As a proximate result of the defendants' legal advice and performance which failed to meet reasonable professional standards, the plaintiffs have lost at least $1 million dollars as damages in their Connecticut federal affirmative action for breach of fiduciary duty, have been exposed to a Cayman Costs Order exceeding $1 million dollars with interest and

compelled to pay exorbitant legal fees and costs to the defendants Gilleran and APS in excess of $2 million dollars.

**Answer:**     Denied.

12.    These losses suffered by the plaintiffs would not have occurred but for the malpractice and erroneous advice and performance of the defendants Gilleran and APS whose malpractice was the cause in fact for the losses suffered by the plaintiffs Kalra, Asia Pacific and Trikona.

**Answer:**     Denied.

## COUNT TWO – BREACH OF FIDUCIARY DUTY

1–12.   The allegations set forth in paragraph 1–12 of the First Count are hereby realleged as if fully set forth as paragraphs 1–12 of this the Second Count.

**Answer:**     The above answers to paragraphs 1–12 are incorporated by reference.

13.    The defendants Adler Pollock and Sheehan PC and Michael Gilleran did have a fiduciary relationship with plaintiffs Kalra, Asia Pacific and Trikona and did owe the plaintiffs a duty of loyalty.

**Answer:**     Paragraph 13 consists of legal conclusions to which no response is required.

14.    The defendants APS and Gilleran have breached both their professional responsibility and fiduciary duty to the plaintiffs in the following respects:

**Answer:**     Denied.

a)    The defendants' decisions to remove Chugh as a director of TAL without Notice was clearly designed to enrich them while at the same time causing irreparable harm to the plaintiffs in the eyes of the Cayman Court in its decision of January 1, 2013.

**Answer:**     Denied.

15

b)      The defendants' decision to fully participate in the Cayman wind-up proceeding of TAL permitted defendants to extract large amounts of legal fees that otherwise would not have been paid had defendants advised the plaintiffs not to participate in the Cayman proceeding because of the risk that an adverse decision would preclude and defeat the Connecticut federal breach of fiduciary duty action against Chugh.

**Answer:**      Denied.

c)      The defendants advice and direction to the plaintiffs to remove Chugh without Notice and to fully participate in the Cayman wind-up proceedings of TAL were critical with respect to defendants' duty of loyalty, because these two decisions were designed to enrich the defendants at the expense of the plaintiffs.

**Answer:**      Denied.

d)      In this respect defendants were guilty of self-dealing and conflict of interest when they subordinated the interests of the plaintiffs to the pecuniary and financial interest of themselves.

**Answer:**      Denied.

e)      The defendants breached the fiduciary duty they owed to the plaintiffs by charging exorbitant fees, churning hours needlessly, falsely representing that they had expertise in areas of the law involving Connecticut state and federal litigation, the law of the Cayman Islands, international bankruptcy, Chapter 15 of the U.S. Bankruptcy Code, the law of comity and collateral estoppel all of which was done by the defendants to exploit and subordinate the legal and financial interests of plaintiffs to the financial interests of the defendants.

**Answer:**      Denied.

f)      The defendants APS and Gilleran further breached their fiduciary duty to the plaintiffs by paying a large sum of money in order to settle vexatious suit and abuse of process claims brought against them by the Chugh parties, knowing that the Chugh parties would use those funds to bankroll continuing litigation against the plaintiffs.

**Answer:**      Denied.

g)      The vexatious suit was originally brought by ARC Capital against the defendants and the plaintiffs Asia Pacific and Trikona in 2014 when the defendants were actively representing the plaintiffs in the Connecticut federal litigation.

**Answer:**      Denied.

h)      On July 23, 2015 the vexatious claims of ARC Capital were dismissed pursuant to a stipulation without prejudice. When the case was subsequently refiled by ARC Capital, LLC on February 15, 2017, the defendants, upon information and belief, paid ARC Capital, LLC and/or other Chugh related entities a sum of money which defendants knew Chugh would use in his ongoing litigation with the plaintiffs.

**Answer:**      Denied.

i)      At the time the vexatious and abuse of process claims were originally brought in December 2014 (Docket No: 3:14-CV-01900 (SRU)), the defendants were actively representing the plaintiffs and owed the plaintiffs a fiduciary duty not to subordinate plaintiffs' financial interests then and in the future in favor of their own pecuniary interests.

**Answer:**      Denied.

j)      Because that fiduciary duty owed by the defendants to the plaintiffs arose while the defendants were actively representing the plaintiffs, that fiduciary duty did not terminate until the ARC Capital vexatious suit and abuse of process claims were finally resolved.

17

**Answer:**      Denied.

k)      The defendants' payment to ARC Capital, LLC and/or related Chugh entities is now and will continue to cause the plaintiffs' great financial loss.

**Answer:**      Denied.

15.      In these respects the defendants Gilleran and APS did breach the fiduciary duty they owed to the plaintiffs and have caused them great financial losses.

**Answer:**      Denied.

**COUNT THREE – VIOLATION OF CUTPA**

Because the Court has dismissed Count Three in its entirety, *see* Memorandum of Decision, ECF No. 39 (Jan. 24, 2019), no answer to the allegations of this count is required.

## DEFENSES

Defendants assert the following defenses to the allegations of the amended complaint:

### FIRST DEFENSE: STATUTE OF LIMITATIONS

Plaintiffs' claims are barred in whole or in part by the applicable statutes of limitations.

### SECOND DEFENSE: PREMATURITY

Plaintiffs' claims are premature in whole or in part to the extent plaintiffs are still involved in underlying litigation with the Chugh parties, and the existence or scope of any injury has not yet been determined.

### THIRD DEFENSE: STANDING

Plaintiffs lack standing to assert claims that belong to Trikona Advisers Limited, to the extent such claims exist.

### FOURTH DEFENSE: RELEASE

Plaintiffs' claims are barred to the extent they were released in the settlement of the claims alleged in *Burns & Levinson LLP v. Kalra*, Case No. 16-cv-10682-DPW (D. Mass.).

Further, to the extent that Trikona purports to assert claims against Defendants, the portion of Trikona not owned by Asia Pacific has already released any interest it may have in claims against Defendants.

### FIFTH DEFENSE: ESTOPPEL

Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel because Plaintiffs' alleged harm is the result of strategies and decisions they knowingly instructed defendants and/or other legal counsel to pursue.

### SIXTH DEFENSE: WAIVER

Plaintiffs' claims are barred in whole or in part by the doctrine of waiver because Plaintiffs' alleged harm is the result of strategies and decisions they knowingly instructed defendants and/or other legal counsel to pursue.

### SEVENTH DEFENSE: CONSENT OR RATIFICATION

Plaintiffs' claims are barred in whole or in part by the doctrine of consent or ratification because Plaintiffs' alleged harm is the result of strategies and decisions they knowingly instructed defendants and/or other legal counsel to pursue.

### EIGHTH DEFENSE: ASSUMPTION OF RISK

Plaintiffs' claims are barred in whole or in part by the doctrine of assumption of the risk because Plaintiffs' alleged harm is the result of strategies and decisions they knowingly instructed defendants and/or other legal counsel to pursue.

### NINTH DEFENSE: UNCLEAN HANDS OR *IN PARI DELICTO*

Plaintiffs' claims are barred in whole or in part under the doctrines of unclean hands or *in pari delicto* because of their own intentional wrongdoing in connection with their disputes with the Chugh parties.

### TENTH DEFENSE: COMPARATIVE OR CONTRIBUTORY NEGLIGENCE

Plaintiffs' claims are barred in whole or in part because their alleged injuries are the result of Plaintiffs' own actions (including the actions of their agents).

### ELEVENTH DEFENSE: FAILURE TO MITIGATE

Plaintiffs' damages are due in whole or in part by their failure to mitigate damages.

**RESERVATION OF RIGHTS**

Defendants reserve all rights to supplement this answer with additional defenses as discovery proceeds.

## COUNTERCLAIMS

Defendant/counterclaim-plaintiff Adler Pollock & Sheehan, P.C. ("APS") hereby alleges as follows:

## PARTIES

1.      Defendant/counterclaim-plaintiff APS is a professional corporation organized under the laws of Rhode Island.

2.      On information and belief, Defendant Aashish Kalra ("Kalra") is a Connecticut resident.

3.      On information and belief, plaintiff/counterclaim-defendant Asia Pacific Ventures, Ltd. ("Asia Pacific") is a foreign corporation. Asia Pacific is owned or controlled entirely by Kalra and operates as his alter ego.

4.      On information and belief, plaintiff/counterclaim-defendant Trikona Advisers Limited ("Trikona") is a foreign corporation, with its principal place of business abroad.

## JURISDICTION

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum of $75,000, excluding interests and costs, and is between citizens of different States and in which citizens or subjects of foreign states are additional parties.

6.      In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a) because this counterclaim arises out of the same transaction or occurrence as Plaintiffs' complaint.

## GENERAL ALLEGATIONS

7.      In early 2011, APS began representing Kalra and Asia Pacific in connection with contemplated legal proceedings against Rakshitt Chugh and Chugh's company, XV Capital.

8.      In approximately April 2011, the parties memorialized the terms of APS's representation of Kalra and Asia Pacific through a written engagement letter. Kalra signed the engagement letter, both on his own behalf and as agent of Asia Pacific, on or about April 26, 2011.

9.      According to the terms of the engagement letter, Kalra and Asia Pacific agreed to compensate APS for its work performed on behalf of Kalra and Asia Pacific on an hourly basis at defined rates, plus expenses and disbursements. In addition, Kalra and Asia Pacific agreed to pay APS twenty percent of the total amount recovered from Chugh and his companies, whether by way of settlement or judgment.

10.     The engagement letter provided that APS would bill Kalra and Asia Pacific for its services on a monthly basis. The engagement letter further provided that Kalra and Asia Pacific would pay APS's legal fees and expenses within thirty days of the date of each invoice.

11.     APS later began representing Trikona in connection with contemplated and existing legal proceedings against Chugh and his related companies.

12.     Kalra, Asia Pacific, and/or Trikona ceased paying APS's monthly invoices in full beginning with APS's July 12, 2013 invoice. Thereafter, Kalra, Asia Pacific, and/or Trikona failed to pay any portion of APS's monthly invoices.

13.     APS nonetheless continued to represent Kalra, Asia Pacific, and Trikona. APS sent Kalra, Asia Pacific, and Trikona its final invoice dated February 9, 2015.

23

14.     In total, Kalra, Asia Pacific, and Trikona failed to pay invoices due to APS in the amount of $742,629.38.

## COUNT ONE: BREACH OF CONTRACT

15.     Paragraphs 1–14 are incorporated by reference into this Count.

16.     The parties entered a binding and enforceable contract.

17.     Counterclaim-defendants' failure to pay APS for services rendered is a breach of their contractual obligations.

18.     Counterclaim-plaintiff APS performed its obligations under the contract.

19.     As a direct and proximate result of defendants' breach, APS has suffered damages of an amount to be proven at trial, but in no event less than $742,629.38.

20.     Kalra, Asia Pacific, and Trikona are each jointly and severally liable for any and all damages to APS.

21.     Kalra is personally liable for any sums owed by Asia Pacific because Asia Pacific is his alter ego with no separate corporate existence.

## COUNT TWO: UNJUST ENRICHMENT/QUANTUM MERUIT

22.     Paragraphs 1–14 are incorporated by reference into this Count.

23.     APS benefited counterclaim-defendants by performing legal services on their behalf.

24.     Counterclaim-defendants failed to fully pay APS for services rendered.

25.     Counterclaim-defendants' failure to fully pay APS has been to APS's detriment.

26.     APS has suffered damages from counterclaim-defendants' non-payment in an amount to be proven at trial, but in no event less than $742,629.38.

27.     Kalra, Asia Pacific, and Trikona are each jointly and severally liable for any and all damages to APS.

28.     Kalra is personally liable for any sums owed by Asia Pacific because Asia Pacific is his alter ego with no separate corporate existence.

## CLAIM FOR RELIEF

Counterclaim plaintiff APS therefore demands:

1.     Compensatory damages, in an amount to be proven at trial but no less than $742,629.38;

2.     Prejudgment interest;

3.     Postjudgment interest;

4.     Such other and further relief as the Court deems just and proper.

## JURY DEMAND

APS demands trial by jury of all issues so triable.

Respectfully submitted,

Dated: February 7, 2019

*/s/  Kim E. Rinehart*
Kim E. Rinehart (ct24427)
Timothy A. Diemand  (ct18075)
William H. Prout, Jr. (ct05494)
David R. Roth (ct29876)
Wiggin and Dana LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, Connecticut 06508-1832
Tel.: (203) 498-4377
Fax: (203) 782-2889
krinehart@wiggin.com
tdiemand@wiggin.com
wprout@wiggin.com
droth@wiggin.com

*Attorneys for Adler Pollock & Sheehan,*
*P.C. and Michael Gilleran*