UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AASHISH KALRA, ) <br> ASIA PACIFIC VENTURES LIMITED, ) <br> TRIKONA ADVISERS LIMITED, ) <br>     *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> ADLER POLLOCK & SHEEHAN, P.C., ) <br> MICHAEL GILLERAN, ) <br>     *Defendants*. ) | 3:18-CV-00260 (KAD) <br><br><br><br><br><br><br><br> August 2, 2020 |

**MEMORANDUM OF DECISION RE: PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE AMENDED COMPLAINT [ECF NO. 65]**

Kari A. Dooley, United States District Judge

    Plaintiffs Aashish Kalra ("Kalra"), Asia Pacific Ventures, Limited ("Asia") and Trikona Advisers, Limited ("TAL") (collectively, "Plaintiffs") move for leave to amend the amended complaint pursuant to Fed. R. Civ. P. 15(a)(2) two years after they commenced this action and over eighteen months after they filed the first amended complaint ("FAC"). In the proposed second amended complaint ("PSAC"), Plaintiffs, in effect, seek to shift liability to Defendants Michael Gilleran ("Gilleran"), their former attorney, and Adler Pollock & Sheehan P.C. ("APS"), Gilleran's former law firm, (collectively, "Defendants") for a verdict recently entered against Plaintiff Kalra in a Connecticut Superior Court action. Defendants oppose Plaintiffs' motion as futile and unduly prejudicial. On May 19, 2020, the Court held oral argument on the motion. For the reasons that follow, the motion is DENIED.

**Background and Procedural History**

    On January 11, 2018, Plaintiffs brought this action in Connecticut Superior Court. Thereafter, on February 12, 2018, Defendants removed the action to this Court. A day after Defendants filed a motion to dismiss on May 14, 2018, the Court ordered Plaintiffs to file a

response or an amended complaint to address the alleged defects discussed in Defendants' memorandum of law. The Court specifically noted that "[t]he Court will not allow further amendments after **June 5, 2018**." (ECF No. 20). Accordingly, on June 5, 2018, Plaintiffs filed the FAC.[1]

**Allegations in the FAC**

The FAC's allegations are summarized as follows.[2] The Plaintiffs entered into an attorney-client relationship with the Defendants in or around April 2011. Defendant Gilleran continued in this relationship until October 2015. Defendant Adler Pollock & Sheehan continued in this relationship until January 2015. During the course of the attorney-client relationship, the Defendants represented the Plaintiffs in no less than five lawsuits or appeals in state, federal and foreign courts. Prior to and during the period of representation, the Defendants told the Plaintiffs, *inter alia*, that they were experienced commercial litigators, knowledgeable and well versed in international bankruptcy law, and highly skilled in the conduct of litigation, to include achieving prompt and favorable settlements.

Plaintiff Asia was a 50% owner of TAL, a Cayman Island entity. Plaintiff Kalra is the controlling principal of Asia. TAL was also 50% owned either by Rakshitt Chugh ("Chugh") or one of his related entities. As a result of a dispute between Kalra and Chugh, on December 28, 2011, the Plaintiffs brought suit against Chugh and his related entities in this Court, *Trikona Advisers Ltd. et al. v. Chugh et al.*, No. 3:11-CV-2015 (SRU) (D. Conn. Dec. 28, 2011) (hereinafter, "2011 district court litigation"). Therein, the Plaintiffs claimed that Chugh breached his fiduciary duties and pleaded related causes of action arising out of the parties' joint interest in

---

[1] This matter was transferred to the undersigned on September 19, 2018.
[2] The allegations contained in the original complaint and the FAC are substantively the same, though the FAC includes greater factual detail than the original complaint.

TAL. In that litigation, a prejudgment remedy was granted and, on April 9, 2012, Chugh posted a $1 million bond in lieu thereof.

In January 2012, the Defendants rendered an opinion letter to Ravindra Chitnis and Saurabh Killa, directors of TAL, that concluded that Chugh could be removed from the TAL Board of Directors without notice and without the need to convene a Board of Directors meeting. They opined that, under TAL's Articles of Association, Chugh could be removed by a resolution in writing signed by all of the Directors, other than the director being removed. At that time, Kalra, Chugh, Chitnis, and Killa were the only directors of TAL.

The purported motive for the opinion letter and the subsequent removal by resolution of Chugh from the TAL Board of Directors was to allow TAL to be substituted as the plaintiff in the 2011 district court litigation, thereby requiring TAL, instead of Kalra or Asia, to pay the legal fees associated with that litigation. The ability of TAL to incur and pay those fees "vastly exceeded" the ability of either Asia or Kalra to pay. (*See* FAC ¶ 10(f), ECF No. 21).

On February 13, 2012, ARC Capital, Inc. ("ARC") and Haida Investments, Ltd. in response to the 2011 district court litigation, filed a Petition in the Grand Court of the Cayman Islands seeking to wind up TAL and to divide its assets between Kalra and Chugh (hereinafter, "Cayman wind-up proceedings"). Asia (the entity through which Kalra owned 50% of TAL), opposed the petition. In connection with the defense of the Cayman wind-up proceedings, the Defendants told the Plaintiffs that the Cayman wind-up proceedings can have "no effect on the U.S. proceedings," that the Judge in the U.S. proceedings "can never recognize any provisional liquidator appointed in the Cayman Proceedings," and that "Chapter 15 [of the United States Bankruptcy Code] is an absolute bar to recognition of foreign liquidators in U.S. Courts unless the recognition requirements of Chapter 15 are met." (*Id*. ¶ 10(j)-(k)).

The Defendants advised the Plaintiffs to assert Chugh's breach of fiduciary duty and related allegations as defenses in the Cayman wind-up proceedings, which they did. The Cayman Court held a trial in January 2013 and rejected each of the defenses asserted by Asia. Thereafter, in the 2011 district court litigation, Judge Underhill gave preclusive effect to the findings of the Cayman Court and the litigation concluded on that basis. That decision was affirmed by the Court of Appeals for the Second Circuit.

Moreover, the Cayman Court "relied heavily upon what [it] called a 'seizure of control' that had serious adverse consequences for Mr. Chugh and the petitioners ARC Capital and Haida Investments 'because it enabled [Kalra] to misuse the company's money for his own benefit.'" (*Id*. ¶ 10(x)). The benefit referred to was the payment of the Defendants' invoices and fees. As a result, the Cayman Court ordered Kalra and Asia to pay $700,000 in costs.

In addition to these allegations, the Plaintiffs allege in Count Two that the Defendants breached their duty of loyalty to the Plaintiffs. The Plaintiffs aver that the decision to remove Chugh as a director of TAL was "clearly designed to enrich [the Defendants]" at the expense of the clients' interests, given the impact of the Cayman Court's decision. (*Id*. ¶ 14(a)). The Plaintiffs further allege that the Defendants' decision to participate in the Cayman wind-up proceedings permitted the Defendants to extract large amounts of legal fees "that otherwise would not have been paid had defendants advised the plaintiffs not to participate in the Cayman proceeding because of the risk that an adverse decision would preclude and defeat the Connecticut federal breach of fiduciary duty action against Chugh." (*Id*. ¶ 14(b)). The Plaintiffs further aver that the Defendants, as a result, were "guilty of self-dealing and conflict of interest when they subordinated the interests of the plaintiffs to the pecuniary and financial interest of themselves." (*Id*. ¶ 14(d)). In addition, the Plaintiffs aver that the Defendants breached their fiduciary duty by "charging

exorbitant fees, churning hours needlessly, and falsely representing that they had expertise in areas of the law" at issue in the various forums. (*Id*. ¶ 14(e)).[3]

### The PSAC's New Allegations

The PSAC's new allegations arise out of a Connecticut Superior Court action, *Chugh v. Kalra*, No. X03-HHD-CV14-6047993-S (hereinafter, "Superior Court litigation"), commenced on January 8, 2014 by Chugh against Plaintiffs Kalra and TAL. In the lawsuit, Chugh alleged that Kalra breached an oral partnership agreement, the "Trikona Group," formed in approximately 2004 for the purpose of investing in Indian real estate, by, among other things, removing Chugh from TAL's Board. On March 3, 2014, Chugh filed an amended complaint alleging that Kalra caused TAL to issue a libelous press release accusing Chugh of paying liquidators in the Cayman wind-up proceedings to interfere with the 2011 district court litigation. Ultimately, in November 2019, a jury returned a verdict finding, among other things, (1) Kalra breached his oral partnership agreement with Chugh resulting in $3.4 million in damages; (2) Kalra breached his fiduciary duty to Chugh resulting in $2 million in damages; and (3) Kalra authorized the publication of the libelous press release resulting in at least $4 million in damages. As relevant here, throughout the Superior Court litigation, Kalra denied the existence of any oral partnership agreement, let alone that he breached such an agreement.

On February 4, 2020, over two months after the verdict entered against Kalra, Plaintiffs filed the instant motion for leave to amend the amended complaint. In the PSAC, Plaintiffs now allege that because of Defendants' "advice to remove Chugh as a director of TAL without Notice, the plaintiff Kalra has suffered a verdict in an action brought by Chugh for breach of a partnership

---

[3] The FAC's remaining allegations, to include a CUTPA claim and claims arising out of Defendants' settlement of a vexatious litigation claim brought by ARC against the Plaintiffs and the Defendants, were dismissed by this Court on January 24, 2019. (*See* ECF No. 39).

agreement and breach of fiduciary duty . . . ." (PSAC ¶ 10(z), ECF No. 65-1) (hereinafter, the "oral partnership allegation"). Plaintiffs further allege that Defendants drafted and published the libelous press release "for the purpose of promoting defendants' commercial interest in obtaining public recognition and the recruitment of other clients . . . ." thereby causing Plaintiff Kalra to "suffer[] a $4 million dollar verdict plus punitive damages . . . ." (*Id*. ¶ 10(bb), (dd)) (hereinafter, the "press release allegation"). Plaintiffs added both allegations to their existing causes of action and used the press release allegation as the basis for a new CUTPA claim.

**Standard of Review**

A plaintiff may amend his complaint once as a matter of right within twenty-one days after service of the complaint or, if a responsive pleading is required, within twenty-one days after service of the responsive pleading. FED. R. CIV. P. 15(a)(1); *Blaine v. UConn Health Care*, No. 3:18-cv-00359 (MPS), 2018 WL 3448165, at *1 (D. Conn. July 17, 2018). In all other cases, the plaintiff may amend his complaint with the Court's leave. FED. R. CIV. P. 15(a)(2). Generally, leave to amend should be "freely give[n]." *Id*.; *accord Foman v. Davis*, 371 U.S. 178, 182 (1962). However, "[l]eave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal quotation marks omitted). Regarding undue delay, "[t]he party seeking leave to amend [] has the burden to explain the delay and show why an amendment is warranted." *Boudreau v. Gonzalez*, No. 3:04CV1471 (PCD), 2006 WL 8446804, at *2 (D. Conn. Oct. 24, 2006). "[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Messier v. Southbury Training Sch.*, No. 3:94-CV-1706 (EBB), 1999 WL 20907, at *3 (D. Conn. Jan. 5, 1999) (internal quotation marks omitted). "In determining what constitutes prejudice, we generally consider whether the assertion of the new

6

claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (internal quotation marks omitted). Importantly, though, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

**Discussion**

Over a year and a half after filing the FAC, Plaintiffs seek to amend the FAC to supplement existing claims and add a new claim based on the oral partnership and press release allegations—allegations which themselves derive from those made against Plaintiffs at least five years ago at the outset of the Superior Court litigation. Principally, Defendants oppose Plaintiffs' motion on two grounds: (1) the motion is futile insofar as the PSAC's new allegations are time-barred and do not relate-back to the allegations contained in either the FAC or the original complaint and (2) granting the motion would be unduly prejudicial to Defendants especially given the Plaintiffs' unreasonable delay in filing the motion and their dilatory conduct throughout the instant litigation. Defendants also oppose the motion as futile insofar as (1) Plaintiff Kalra's own wrongful conduct in connection with the new allegations would bar recovery and (2) Plaintiffs' CUTPA claim simply recasts their malpractice claim as a CUTPA claim.

The Court agrees with Defendants that the motion should be denied because the Plaintiffs have not offered any sound reason for the delay in asserting these allegations and to allow the PSAC would be unduly prejudicial to Defendants.[4] *See Foman*, 371 U.S. at 182.

---

[4] Because the Court denies Plaintiffs' motion for leave to amend on this basis, the Court does not address Defendants' alternative arguments.

This action has been pending in this Court since February 12, 2018. Plaintiffs filed the instant motion for leave to amend on February 4, 2020. Although the subject of a motion for extension of time, discovery was scheduled to conclude by July 30, 2020. Further, all of the new allegations in the PSAC refer to events which pre-date the filing of the original complaint. Indeed, they date back to 2012 and 2013. And the Plaintiffs have known since 2014 that the events at issue were the basis for Chugh's claims against Kalra because of the Superior Court litigation. At the very least, Plaintiffs should have included them in their FAC when the Court, on May 15, 2018, warned Plaintiffs that "[t]he Court will not allow further amendments after **June 5, 2018**." (ECF No. 20). Given this unnecessary delay, it is Plaintiffs' burden to explain why this Court should grant them leave to amend. *See Gonzalez*, No. 3:04CV1471 (PCD), 2006 WL 8446804, at *2; *Messier*, No. 3:94-CV-1706 (EBB), 1999 WL 20907, at *3; *see also Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 46–48 (2d Cir. 1983) (finding that the district court abused its discretion in granting leave to amend answer where defendant sought to add affirmative defense it could have asserted over two years earlier without any good cause for the delay). But Plaintiffs offer no explanation for failing to include these allegations when they brought this action in 2018 and it appears to the Court to have been a purely strategic decision.[5]

Further, there is little question that Defendants would be significantly prejudiced if the Court were to permit the amendment. To date, this litigation has focused on two main issues: (1) whether Defendants' opinion letter regarding the removal of Chugh from TAL's Board without notice or an in-person meeting was malpractice and/or a breach of Defendants' fiduciary duty insofar as Defendants incorrectly interpreted TAL's Articles of Association thereby prejudicing

---

[5] At the hearing on the motion to amend, Plaintiffs argued in a conclusory fashion that the amendment "isn't going to cause a delay in the proceeding. This isn't going to delay anything . . . [Defendants] have been well aware of this . . . there is no prejudice, no prejudice, to the Defendants, other than having to defend against this claim." (ECF No. 95 at p. 45–46).

Plaintiffs in the Cayman wind-up proceedings and (2) whether Defendants' decision to encourage Plaintiffs' participation in the Cayman wind-up proceedings was malpractice and/or a breach of Defendants' fiduciary duty insofar as it allowed Defendants to "churn the file" for legal fees and caused Plaintiffs to be collaterally estopped from pursuing claims in the 2011 district court litigation. Now, Plaintiffs seek to also litigate (1) whether Defendants' advice regarding the removal of Chugh from TAL's Board caused Plaintiff Kalra to breach the oral partnership agreement, an agreement allegedly formed roughly seven years before Defendants represented Plaintiffs and an agreement Kalra has repeatedly denied existed,[6] and (2) whether Defendants caused Plaintiffs to publish the libelous press release regarding the Cayman wind-up proceedings. These additional allegations would undoubtedly require the parties to engage in copious amounts of additional discovery[7] and expend significant additional resources to prepare for trial. Indeed, the Connecticut Superior Court litigation dealing with these same issues only recently came to verdict after over five years of contentious litigation. And the manner and means of how that litigation was conducted by the Plaintiffs is pointedly relevant to the Plaintiffs' claimed damages.

Moreover, Plaintiffs' conduct to date gives the Court no reason to believe that additional discovery would proceed expeditiously. To the contrary, the Court has good reason to believe that additional discovery of this magnitude could prolong this litigation indefinitely. For example, the Court is still dealing with Plaintiffs' ongoing non-compliance with discovery requests served in April 2019. As previously found by the Court, Plaintiffs have repeatedly flouted Court ordered compliance with the April 2019 discovery requests (*see* ECF No. 61) to the point where eventually

---

[6] Indeed, the Superior Court litigation is on appeal to the Appellate Court. Therein, Kalra seeks to overturn the jury's verdict as to both the existence or breach of an oral partnership agreement. *See Chugh v. Kalra, et al.*, No. AC 44039.

[7] As Defendants correctly observe, additional discovery would likely include, "the history of the alleged partnership agreement; evidence, if any exists, of Defendants' awareness of the agreement or advice in connection with it; the full extent of the parties' involvement in and understanding of the press release; and the manner in which Plaintiffs defended against Chugh's claims [in the Superior Court litigation]." (ECF No. 72 at p. 14).

the Court ordered Plaintiffs to pay Defendants $12,112.93 in attorneys' fees as a sanction for their dilatory discovery practices. (ECF No. 86).[8] And currently pending before the Court is Defendants' second motion for sanctions seeking removal of TAL as a Plaintiff in this action and dismissal of various claims for damages due to Plaintiffs' continued non-compliance. (*See* ECF No. 60).[9] In response, by motion dated May 29, 2020, Plaintiffs seek yet another extension in order to fully comply. (*See* ECF No. 96). The Court concludes under the circumstances presented that granting Plaintiffs' motion for leave to amend would result in a significant amount of additional discovery which in turn would cause significant additional expenditure of resources and an unacceptable delay in the resolution of this case.[10]

**Conclusion**

For all of the foregoing reasons, the motion to amend is DENIED.

---

[8] As previously detailed by the Court: "The Defendants served written discovery on the Plaintiffs on or about April 24, 2019. (*See* ECF No. 50-3). The Plaintiffs did not object to the discovery but nor did they provide responses to the discovery. (*See* ECF 50-1). On May 31, 2019, the Court granted Plaintiffs' request (*nunc pro tunc*) that they be given until June 28, 2019 to respond to the Defendants' discovery. (ECF No. 45). The Plaintiffs did not provide responses by June 28, 2019. (*See* ECF 50-1). On September 26, 2019, the Plaintiffs filed an unopposed motion to modify the scheduling order, to include a modified deadline for responding to the April discovery. (ECF No. 47). Specifically, the motion provided: 'Plaintiffs' Response to Defendants' discovery served in April 2019 shall be due by October 31, 2019. It is a condition of Defendants' consent to this motion that Plaintiffs shall interpose no objections to this discovery and will fully respond to it by October 31, 2019.' (*Id.* at pg. 2). The Plaintiffs did not adequately respond to the discovery by October 31, 2019. (*See* ECF No. 50-1). On November 18, 2019, the Defendants filed a Motion to Compel and for Sanctions seeking an order of compliance and an award of attorneys' fees. (ECF No. 50). The Court convened a telephonic hearing on the motion on November 22, 2019. (ECF No. 52). The Plaintiffs requested until December 13, 2019 to comply with the April discovery, which the Court granted. (*Id.*)." (ECF No. 61 at p. 1–2). However, rather than fully comply with the discovery request, the Plaintiffs filed a motion for a protective order on December 13, 2019, seeking to prevent disclosure of certain tax returns. (ECF No. 53). Because the tax returns were sought in the April 2019 discovery and were included within the motion to compel, which the Court granted, the motion for protective order was denied. (ECF No. 85).

[9] The Plaintiffs are also in the process of changing lawyers; have filed a motion for reconsideration of the sanctions order which also seeks a hearing on whether Plaintiffs or their (soon to be) former counsel should pay the sanction; and they seek generally to extend all deadlines so that successor counsel, who has yet to file an appearance or be identified, can conduct discovery. (*See* ECF No. 96 and ECF No. 100). These motions shall be addressed in a separate ruling.

[10] As the Defendants have repeatedly asserted, additional delay equates to additional prejudice to the Defendants. This is a legal malpractice action which, by its very pendency, impacts the Defendants in the conduct of their law practice.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of August 2020.

                                      */s/ Kari A. Dooley*
                                      KARI A. DOOLEY
                                      UNITED STATES DISTRICT JUDGE