UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Aashish Kalra,
Asia Pacific Ventures Limited, and
Trikona Advisers Limited,

            Plaintiffs,

v.

Adler Pollock & Sheehan, P.C. and
Michael Gilleran,

            Defendants.

Civil No. 3:18-cv-00260-KAD

December 31, 2020

## RULING ON PLAINTIFFS' MOTION TO COMPEL [ECF NO. 121]

    The Plaintiffs Aashish Kalra, Asia Pacific Ventures Limited and Trikona Advisers Limited (collectively, "Plaintiffs") have moved the Court for an order directing Attorney Frank J. Silvestri, an expert witness for the Defendants Michael Gilleran and Adler Pollock & Sheehan, P.C. (collectively, "Defendants"), to appear for a second deposition session. ("Motion," ECF No. 121.) The Plaintiffs also seek a forty-five-day extension of the dispositive motion deadline. (*Id.*) Judge Dooley referred the Motion to the undersigned. (ECF No. 122.) The Plaintiffs have submitted three memoranda in support of the Motion (ECF Nos. 121-1, 126, 128); the Defendants have submitted two memoranda in opposition (ECF Nos. 124, 127-1); and the Court held a teleconference with the parties. (ECF No. 125.) For the following reasons, the Motion is **DENIED**.

**1.  Factual Background**

    This is a legal malpractice and breach of fiduciary duty case arising out of a dispute between Aashish Kalra and Rakshitt Chugh. (*See generally* Am. Compl., ECF No. 21.) Kalra and Chugh were directors of Trikona Advisers Limited ("TAL"), a Cayman Islands corporation. (*Id.*

¶¶ 3, 10(e).)  They disagreed over whether to liquidate certain corporate assets (ECF No. 121-1, ¶¶ 10-11), and Kalra hired the Defendants – Attorney Michael Gilleran and his law firm, Adler Pollock & Sheehan, P.C. ("APS") – "in the Spring of 2011 to assist in the problem."  (*Id.* ¶ 12.)

In late 2011, APS and Gilleran filed a lawsuit on behalf of TAL and against Chugh in this court.  (ECF No. 21, ¶ 10(a)) (the "Connecticut lawsuit").  The Plaintiffs allege that APS and Gilleran also assumed responsibility for "all decision-making and the bulk of the work on" a related lawsuit in the Grand Court of the Cayman Islands.  (*Id.* ¶¶ 10(h), -(i)) (the "Cayman lawsuit").  In 2013, the Cayman lawsuit ended unfavorably for Kalra.  (*Id.* ¶ 10(s).)  And in 2014, this court "gave preclusive effect to issues decided in . . . the Grand Court of Cayman" and decided the Connecticut lawsuit in Chugh's favor.  (*Id.* ¶ 10(t).)

In their operative complaint in this case, the Plaintiffs attribute these litigation losses principally to two instances of alleged malpractice by the Defendants.  First, the Plaintiffs allege that the Defendants counseled them to remove Chugh from TAL's board of directors by a simple resolution, without a full board meeting – advice that later came back to haunt them when the Cayman Islands court held that Chugh had been the victim of a wrongful "seizure of control." (*Id.* ¶¶ 10(d), -(x).)  Second, the Plaintiffs allege that the Defendants advised them to "fully participate in the Cayman litigation," advice that they likewise regretted accepting after this court gave preclusive effect to the Cayman court's decisions.  (*Id.* ¶¶ 10(t), -(y).)  The Plaintiffs contend that this second piece of advice arose, in whole or in part, out of the Defendant's misunderstanding of and overreliance upon Chapter 15 of the Bankruptcy Code.  (*Id.* ¶¶ 10(j), -(p).)  In any event, the Plaintiffs sum up by alleging that "[t]hese decisions by defendants Gilleran and APS to remove Chugh as a TAL director without notice and to fully participate in the Cayman litigation were the

cause in fact and the proximate cause of the complete defeat" in the Connecticut lawsuit. (*Id.* ¶ 10(y).)

Also relevant to the Motion is a lawsuit that Chugh filed against Kalra in the Connecticut Superior Court in 2014.  In that lawsuit, Chugh "alleg[ed] that Kalra caused TAL to issue a libelous press release accusing Chugh of paying liquidators in the Cayman . . . proceedings to interfere with the" Connecticut lawsuit.  (ECF No. 101, at 5.)  When they filed their complaint in this case, the Plaintiffs did not allege that the Defendants had advised them to issue the press release, nor did they cite any such advice as an instance of alleged malpractice.  (*See generally* ECF No. 1.)  After Chugh obtained a $4,000,000 libel verdict from a Superior Court jury in November 2019, however, the Plaintiffs sought leave to amend their complaint to allege such a claim.  (ECF No. 65.)

Judge Dooley denied the motion for leave to amend because the Plaintiffs had "not offered any sound reason for the delay in asserting these allegations," which "derive[d] from those made against Plaintiffs at least five years ago at the outset of the Superior Court litigation."  (ECF No. 101, at 7.)  She also held that "the Defendants would be significantly prejudiced if the Court were to permit the amendment," because "[t]hese additional allegations would undoubtedly require the parties to engage in copious amounts of additional discovery."  (*Id.* at 9) (footnote omitted).  More specifically, she identified the prospect of having to conduct discovery on "the full extent of the parties' involvement in and understanding of the press release" as one reason why the Defendants would be prejudiced by the proposed amendment.  (*Id.* at 9 n.7.)

While the motion for leave to amend was pending, the parties reached an agreement respecting expert witness discovery. Specifically, they agreed that "[d]iscovery of expert materials shall be limited to final expert reports and materials relied upon in connection with those reports." (ECF No. 77, at 1.)  They added that "[f]or the avoidance of doubt, materials that are considered

3

but not relied upon by an expert shall not be discoverable notwithstanding any language to the contrary in Fed. R. Civ. P. 26(a)(2)(B)(ii)." (*Id.*) They also agreed that "no party may seek discovery, by any method (including by deposition), of the following, except to the extent that it constitutes factual information that the expert relied upon in forming his or her opinion: . . . (v) any notes or other writings made by, for, or at the direction of an expert." (*Id.* at 1-2.) The agreement was signed by the Plaintiffs' then-counsel, Andrew Bowman, and docketed as a Joint Addendum to the Standing Protective Order. (*Id.*)

With this agreement in place, the Defendants disclosed Attorney Silvestri as an expert witness. (ECF No. 121-2) (expert report of F. Silvestri dated July 8, 2020). Attorney Silvestri's expert witness report included a list of documents that he had reviewed and relied upon in forming his opinions. (*Id.* at 4 & Ex. B.) His report also stated that he had "relied on" an "interview of Mr. Gilleran" (*id.* at 4), but it did not identify any notes of that interview as documents that he relied upon in forming his opinions.

The Plaintiffs discharged Attorney Bowman, and Attorney Richard Schrier appeared in his stead. (ECF No. 90.) Attorney Schrier took Attorney Silvestri's deposition on December 3, 2020. (ECF No. 121-1, ¶ 3.) Early in the questioning, Attorney Schrier asked the witness about the materials he reviewed in the course of forming his expert opinions. (*E.g.,* ECF No. 126-2, at 8:14 – 9:7.) Defendants' counsel objected on the ground that the documents *considered* – as opposed to the documents *relied upon* – were outside the scope of discovery pursuant to the parties' March 30, 2020 agreement. (*See id.* at 9:19 – 10:4.) The transcript suggests that Attorney Schrier was unaware of his predecessor's agreement, and that the objection accordingly took him by surprise. (*See id.* at 10:5-7) (responding to the objection by asking Defendants' counsel to "give [him] a heads up" about the agreement, because "it might affect my questioning").

As the deposition went on, Attorney Schrier learned that Attorney Silvestri had taken notes of his interview with Gilleran. (ECF No. 126, ¶ 7.j) He called for production of the notes, but the Defendants' counsel objected on the record. (ECF No. 126-2, at 13:20-25.) Later in the deposition, Attorney Schrier asked Attorney Silvestri to retrieve the notes from his office, but the Defendants' counsel instructed him not to do so. (ECF No. 126-3, at 205:17-20.) The Defendants again contended, in substance, that discovery of or relating to expert witness notes had been placed off limits by the March 30, 2020 agreement. (*Id.*; *see also* ECF No. 77.)

In the instant Motion, the Plaintiffs seek production of Attorney Silvestri's notes and an order directing him to appear for a continued deposition so they can "ask questions regarding same." (ECF No. 121-1, ¶ 4.) They also contend that "Defendants' counsel directed the witness not to answer any questions with regard to the Chapter 15 issue" – that is, Gilleran's alleged misunderstanding of and overreliance upon Chapter 15 of the Bankruptcy Code – and that Attorney Silvestri's deposition should be reopened so they can get answers to these questions. (*Id.* ¶ 33.) Third, they seek to reconvene the deposition so they can ask Attorney Silvestri "questions regarding the press release prepared and published by Gilleran." (*Id.*) Fourth and finally, the Plaintiffs seek a forty-five-day extension on the deadline for filing dispositive motions, to allow them time to consider the deposition testimony they say they are owed. (ECF No. 121, at 1.) The Court will now address whether any of these contentions provide a basis for reopening Attorney Silvestri's deposition in this long-delayed case.

**2. Discussion**

    *A.   Attorney Silvestri's Notes*

The Plaintiffs seek an order directing Attorney Silvestri to "produce a copy of the notes he made contemporaneously with his interviews with Defendant, Gilleran." (ECF No. 121-1, ¶ 36.)

They concede, however, that they did not validly request production of the notes at any time before the deposition, nor did they take the customary step of serving a subpoena commanding Attorney Silvestri to bring his file to the deposition. (ECF No. 126, ¶ 7.) They say that Attorney Silvestri's notes would have been responsive to several requests for production that they sent to the Defendants on July 30, 2020 (*id.* ¶ 7.d), but they acknowledge that Judge Dooley disallowed those requests on the ground that they had not been served within the fact discovery period. (*Id.* ¶ 7.g.) Thus, when Attorney Silvestri walked into the deposition room on December 3rd, neither he nor the Defendants had been validly served with a request for production of his notes.[1]

The Plaintiffs argue that they were nonetheless entitled to demand production on the spot, but they cite no authority for this claim. To the contrary, requests for production of documents made in connection with depositions are "governed by Rule 34," which does not contemplate on-the-spot demands but rather "permits 30 days to respond to a production request." *Sheehy v. Ridge Tool Co.*, No. 3:05-cv-01614 (CFD) (TPS), 2007 WL 1548976, at *4 (D. Conn. May 24, 2007); *accord Gilbert v. E.I. DuPont de Nemours & Co.*, No. 3:15-cv-00988 (AWT) (SALM), 2016 WL 3211682, at *3 (D. Conn. June 9, 2016) (collecting cases). Courts in this District have declined to compel production of documents that were requested in advance of – but less than thirty days before – a deposition. *E.g., id.*; *Lagnese v. Town of Waterbury*, No. 3:15-cv-00975 (AWT) (SALM), 2015 WL 7432318, at *2 (D. Conn. Nov. 23, 2015); *Sheehy*, 2007 WL 1548976, at *4; *Ottaviano v. Pratt & Whitney, Div. of United Techs. Corp.*, No. 3:00-cv-536 (PCD), 2001 WL

---

[1] The Plaintiffs might argue that they could not have made a timely request for production of Attorney Silvestri's notes prior to the deposition because the notes' existence had not yet been revealed. Any such argument would be implausible, however, in light of the fact that the parties clearly discussed expert witness notes in the process of reaching their discovery agreement. (*See* ECF No. 77, at 1) (agreement addressing discoverability of "any notes or other writings made by, for, or at the direction of an expert").

650708, at *1 (D. Conn. June 7, 2001) (recipient of deposition notice *duces tecum* "is entitled to the full thirty days, from the date of receipt of the notice, in which to respond"). This Court declines to compel production of a document that was requested on even less notice.

Moreover, the Court agrees with the Defendants that Attorney Silvestri's notes were placed outside the scope of discovery by the parties' March 30, 2020 agreement. Parties are free to "agree upon . . . limitations upon discovery." Fed. R. Civ. P. 29 advisory committee's note to 1993 amendment. And provided that such agreements are properly memorialized in writing, courts ordinarily enforce them. *See, e.g., Scott-Iverson v. Indep. Health Ass'n, Inc.*, No. 13-cv-451 (VF) (LGF), 2016 WL 3444226, at *3 (W.D.N.Y. June 23, 2016); *cf. Wells Fargo Bank, N.A. Trustee v. Konover*, No. 3:05-cv-1924 (CFD) (WIG), 2008 WL 11377755, at (D. Conn. June 26, 2008) (holding that discovery agreements are enforceable, but finding that parties did not agree). In this case, the parties clearly agreed in writing that "no party may seek discovery, by any method (including by deposition), of . . . notes or other writings made by, for, or at the direction of an expert." (ECF No. 77, at 1-2.) That the Plaintiffs may now regret their agreement does not make it any less enforceable.[2]

---

[2] The Plaintiffs cite *Ordon v. Karpie*, 223 F.R.D. 33 (D. Conn. 2004) for the proposition that parties may ordinarily discovery material that "the expert saw, heard, considered, read, thought about or relied upon in reaching the conclusions and opinions to be expressed." (ECF No. 126, ¶ 10.) Yet the parties' discovery agreement renders that general principle inapplicable to this case. The Plaintiffs and the Defendants expressly agreed to limit expert discovery to those materials that were *relied upon*, and further agreed that "[f]or the avoidance of doubt, materials that are considered but not relied upon by an expert shall not be discoverable notwithstanding any language to the contrary in Fed. R. Civ. P. 26(a)(2)(B)(ii)." (ECF No. 77, at 1.)

The Plaintiffs also cited several cases about the general breadth of discoverable material, and the breadth of the concept of relevance during the discovery phase of the case. (ECF No. 128) (citing, *inter alia*, *Sec. Ins. Co. v. Trustmark Ins. Co.*, 218 F.R.D. 29 (D. Conn. 2003) for the proposition that "the scope of discovery under Fed. R. Civ. P. 26(b) is very broad," and *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94 (S.D.N.Y. 1997) for the proposition that "[r]elevance for discovery purposes is an extremely broad concept"). These cases are likewise inapposite, because

The Plaintiffs point out that the same agreement rendered discoverable all "factual information that the expert relied upon in forming his or her opinion." (ECF No. 126, ¶ 4) (quoting ECF No. 77, at 1.) And they add that Attorney Silvestri "relied on . . . [his] interview of Mr. Gilleran" in forming his expert opinions. (ECF No. 121-1, ¶ 3) (quoting Expert Rpt., ECF No. 121-2, at 4). But the Defendants respond that "the 'factual information' Mr. Silvestri relied upon for his opinions was the conversation with Defendant Gilleran itself – not his notes." (ECF No. 127-1, at 1.) The Plaintiffs have not cited any deposition testimony to contradict this, and the Court has searched the entire transcript without success for any passages in which Attorney Silvestri testified to relying upon his notes – rather than his recollections of his conversations with Gilleran – in forming his opinions.[3] Had the Plaintiffs elicited testimony that Attorney Silvestri *relied* upon the notes, then those notes would have been within the scope of the March 30, 2020 discovery agreement. But in the absence of any such testimony, the Court concludes that they are not discoverable.

Because the notes are outside the scope of discovery in this case, their non-production is not a sufficient reason to reopen Attorney Silvestri's deposition. The Plaintiffs suggest that, even if the Defendants were within their rights to withhold the notes, Attorney Silvestri should have retrieved them from his office during the deposition so he could refresh his recollection about his conversations with Gilleran. The Defendants rightly characterize this, however, as a "novel argument" for which "Plaintiffs cite no case law." (ECF No. 127-1, at 2.) The deposition transcript

---

they do not involve situations in which the parties entered into an enforceable, written agreement to limit discovery.

[3]     This search was complicated – and the disposition of the Motion was delayed – by the fact that the Plaintiffs did not submit the deposition transcript in OCR-searchable format. (*See* ECF Nos. 126-2, 126-3.) The Plaintiffs' counsel is respectfully directed to review the District of Connecticut's Electronic Filing Policies and Procedures respecting OCR-searchability, and to comply with those policies and procedures in the future.

discloses that Attorney Schrier was permitted to ask, and the Defendants' counsel permitted Attorney Silvestri to answer, all questions about his conversations with Gilleran to the best of his recollection. The Court concludes that the Plaintiffs are not entitled to production of Attorney Silvestri's notes, and that nothing about their non-production justifies reopening his deposition.

   B.   *"The Chapter 15 Issue"*

The Plaintiffs next claim that "Defendants' counsel directed the witness not to answer any questions with regard to the Chapter 15 issue" (ECF No. 121-1, ¶ 33), but this claim is easily dismissed. As the Defendants point out in their opposition, Plaintiffs' counsel asked a number of questions about this issue, and Attorney Silvestri answered each one. (*See* ECF No. 124, at 3 n.3 ("Plaintiffs' counsel asked questions without objection about Chapter 15"); ECF No. 124-2, at 69-70 and 198-99 (deposition transcript excerpts demonstrating that Plaintiffs' counsel asked, and Attorney Silvestri answered, questions about Gilleran's experience with and understanding of Chapter 15).) The Plaintiffs have not identified any specific, Chapter 15-related question that Attorney Silvestri was instructed not to answer,[4] and accordingly this issue does not support reopening his deposition.

   C.   *The Press Release*

The Plaintiffs also seek to reopen Attorney Silvestri's deposition on the ground that Defendants' counsel instructed him not to answer questions about the 2013 press release that

---

[4] Local Rule 37(b) provides that "[e]ach memorandum" supporting a motion for relief under Rules 26 through 37 "shall contain a . . . specific verbatim listing of each of the items of discovery sought or opposed." A motion to compel answers to deposition questions that the defending attorney instructed the witness not to answer should therefore be accompanied by a memorandum containing "a specific verbatim listing" of the questions asked and resisted. *Cf. id.*; *see also Charles v. Saundry*, No. 3:06-cv-211 (AHN) (HBF), 2007 WL 8706363, at *1 (D. Conn. Nov. 15, 2007) (denying motion to compel answers to Rule 31 deposition upon written questions because motion was not "accompanied by a memorandum of law containing . . . a specific verbatim listing of each of the items of discovery sought or opposed"). The Plaintiffs have not done so in this case,

9

resulted in the $4,000,000 verdict against Kalra.  (ECF No. 121-1, ¶¶ 33-35) (ECF No. 121-16).  The Defendants respond by pointing out that Judge Dooley denied the Plaintiffs' motion to amend their complaint to assert claims arising out of the press release.  (ECF No. 124, at 3-5.)  They argue that "[a]n expert cannot be forced to answer questions totally unrelated to the matters" remaining in the case, "especially after the court has issued an order precluding those matters from being injected into the lawsuit."  (*Id.* at 3) (original emphasis omitted).  The Court agrees with the Defendants.

As the U.S. Supreme Court has explained, "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978).  "Based upon this language in *Oppenheimer*, judges in this district, as well as in other districts, have refused to allow parties to pursue discovery regarding claims that previously have been dismissed."  *Kopperl v. Bain*, No. 3:09-cv-1754 (CSH) (JGM), 2014 WL 1761956, at *1 (D. Conn. May 1, 2014) (citing cases); *see also Bourget v. Gov't Emps. Ins. Co.*, 313 F. Supp. 367, 372-73 (D. Conn. 1970), *rev'd on other grounds,* 456 F.2d 282 (2d Cir. 1972) (striking two affirmative defenses and holding that "[s]ince both of these defenses are being ordered stricken, defendant's production motion accordingly must be denied.").

The Plaintiffs disagree that the press release is relevant *only* to the CUTPA claim that Judge Dooley excluded from the case.  They argue that information about the press release is also relevant to the claims that remain, in two respects.  First, they claim that the press release "was a factor considered by Silvestri in preparing his report," and they add that "[d]rafts of the Press Release

---

electing instead to supply a few examples in their reply brief but otherwise leaving it to the Court to review the entire non-OCR searchable deposition transcript and catalog all of the questions that the witness was instructed not to answer.  Although the Court was not obliged to do so, it has nevertheless reviewed the entire transcript.  It did not identify any Chapter 15-related questions that the witness was prevented from answering, nor have the Plaintiffs cited any.

10

were attached to Silvestri's report and made up a part of the basis for his opinions expressed in his report." (ECF No. 126, ¶ 18.) Second, they contend that although their "CUTPA cause of action . . . focused on the preparation and issuance of the Press release, is not part of this case, nonetheless, all of Defendants' actions and inactions in their representation of Plaintiffs is [sic] clearly at issue in this case." (*Id.* ¶ 13.) They assert that "[t]he denial of Plaintiff's application to add the CUPTA [sic] cause of action was not a substantive determination that the act of preparing and publishing a press release did not prevent discovery related to the actions and inactions of Defendants in connection with Plaintiff's malpractice claim." (*Id.*)

Like the Chapter 15 argument, each of these two arguments is easily dismissed. With respect to the first argument, the record simply does not support the claim that the press release "was a factor considered by Silvestri in preparing his report," nor that the release "made up a part of the basis for his opinions expressed in the report." To the contrary, the press release and documents related to it are conspicuously absent from Attorney Silvestri's list of materials relied upon, and there are no "[d]rafts of the Press Release . . . attached to Silvestri's report." (ECF No. 121-2, Ex. B.) It appears that the Defendants are correct when they say that the Plaintiffs have confused their own deposition exhibits with the exhibits to Attorney Silvestri's report. (ECF No. 127-1, at 3.)

The Plaintiffs' second argument fails because it ignores key elements of Judge Dooley's order denying their motion for leave to amend. It is true that the motion for leave to amend sought to introduce a new CUTPA claim into the case, as the Plaintiffs note. (ECF No. 126, ¶ 13.) But that is not all that it did; it also sought to introduce factual allegations about the press release into the two existing claims for legal malpractice and breach of fiduciary duty. (ECF No. 101, at 6.) Judge Dooley denied the motion for leave to amend not only with respect to the CUTPA claim,

but also with respect to the effort to add press release allegations to the existing causes of action. (*Id.* at 9-10.)  Moreover, she did so because "[t]hese additional allegations would undoubtedly require the parties to engage in copious amounts of additional discovery," to the prejudice of the Defendants.  (*Id.* at 9.)  Against this backdrop, no reasonable reader of her order could conclude that she intended to limit discovery on the press release only as it relates to the dismissed CUTPA claim.  It is clear to this Court that she denied leave to insert press release allegations into the two existing counts as well, precisely because it would unfairly prejudice the Defendants to have to endure the expense and effort of the resulting discovery.

**3.    Conclusion**

The Court has considered all of the other information and arguments raised in the Plaintiffs' papers, and concludes that none of them support reopening Attorney Silvestri's deposition.  For example, the Plaintiffs complain that they were prevented from asking about "letters Gilleran sent to politicians" (ECF No. 121-1, ¶ 33), but they do not explain how this line of inquiry would be any more relevant to any extant claim than the press release.  They also argue that they should have been permitted to ask about the Defendants' own settlement with Chugh (ECF No. 126, ¶¶ 22-27), citing those paragraphs in their complaint that reference the settlement, but the Defendants rightly point out that Judge Dooley dismissed those claims nearly two years ago.  (ECF No. 39, at 8) ("allegations that the Defendants breached their fiduciary duty to the Plaintiffs when they settled the lawsuit brought by [Chugh's interests] is not a basis upon which a breach of fiduciary duty claim can be founded").

In summary, the Plaintiffs have identified no reason to reopen Attorney Silvestri's deposition.  And because there is no reason to do so, there is likewise no reason to grant their

corresponding request for an extension of the dispositive motion deadline.  The Plaintiffs' Motion is therefore **DENIED** in all respects.

This is not a Recommended Ruling.  It is a ruling by a magistrate judge on a "nondispositive motion[] . . . . relating to discovery," D. Conn. L. R. 72.1(C)(2), and as such it is reviewable pursuant to the "clearly erroneous" statutory standard of review.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2(b).  It is an order of the Court unless reversed or modified upon timely objection under Local Rule 72.2(a).

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge