## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| AASHISH KALRA, ASIA PACIFIC VENTURES LIMITED, TRIKONA ADVISERS LIMITED,<br>    *Plaintiffs*,<br><br>v.<br><br>ADLER POLLOCK & SHEEHAN, P.C., MICHAEL GILLERAN<br>    *Defendants*. | 3:18-CV-00260 (KAD)<br><br><br><br><br><br><br><br><br><br>January 25, 2021 |

**ORDER ON DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 60) AND PLAINTIFFS' MOTION FOR RECONSIDERATION (ECF NO. 96)**

Kari A. Dooley, United States District Judge

Time and again, this Court has ordered the Plaintiffs to meet their discovery obligations. Time and again, the Plaintiffs have failed to do so. At this juncture, the only remaining question is what the consequences shall be for this egregious course of conduct by the Plaintiffs. Pending before the Court is Defendants' second motion for sanctions arising out of Plaintiffs' continuing failure to obey the Court's discovery orders as well as Plaintiffs' motion for reconsideration regarding (1) the Court's April 28, 2020 Order awarding attorneys' fees to Defendants in connection with a prior motion to compel (ECF No. 50) and (2) certain other issues raised in connection with Defendants' second motion to compel and for sanctions. For the reasons that follow, Defendants' motion for sanctions is GRANTED and Plaintiffs' motion for reconsideration is DENIED.

**Background and Procedural History**

The issues presented in these motions must be viewed in the context of the allegations in the operative complaint as well as the tortured procedural history of this litigation. The Court

summarizes the allegations in Plaintiffs' amended complaint as follows. The Plaintiffs entered into an attorney-client relationship with the Defendants in or around April 2011. Defendant Michael Gilleran continued in this relationship until October 2015. Defendant Adler Pollock & Sheehan continued in this relationship until January 2015. During the course of the attorney-client relationship, the Defendants represented the Plaintiffs in no less than five lawsuits or appeals in state, federal and foreign courts. Prior to and during the period of representation, the Defendants told the Plaintiffs, *inter alia*, that they were experienced commercial litigators, knowledgeable and well versed in international bankruptcy law, and highly skilled in the conduct of litigation, to include achieving prompt and favorable settlements.

Plaintiff Asia Pacific Ventures Limited ("Asia Pacific") was a 50% owner of Plaintiff Trikona Advisers Limited ("TAL"), a Cayman Island entity. Plaintiff Aashish Kalra is the controlling principal of Asia Pacific. TAL was also 50% owned either by Rakshitt Chugh ("Chugh") or one of his related entities. As a result of a dispute between Kalra and Chugh, on December 28, 2011, the Plaintiffs brought suit against Chugh and his related entities in this Court, *Trikona Advisers Ltd. et al. v. Chugh et al.*, No. 3:11-CV-2015 (SRU) (D. Conn. Dec. 28, 2011) (hereinafter, "D. Conn. action"). Therein, the Plaintiffs claimed that Chugh breached his fiduciary duties and pleaded related causes of action arising out of the parties' joint interest in TAL. In that litigation, a prejudgment remedy was granted and, on April 9, 2012, Chugh posted a $1 million bond in lieu thereof.

In January 2012, the Defendants rendered an opinion letter to Ravindra Chitnis and Saurabh Killa, directors of TAL, that concluded that Chugh could be removed from the TAL Board of Directors without notice and without the need to convene a Board of Directors meeting. They opined that, under TAL's Articles of Association, Chugh could be removed by a resolution in

2

writing signed by all of the Directors, other than the director being removed. At that time, Kalra, Chugh, Chitnis, and Killa were the only directors of TAL.

The purported motive for the opinion letter and the subsequent removal by resolution of Chugh from the TAL Board of Directors was to allow TAL to be substituted as the plaintiff in the D. Conn. action, thereby requiring TAL, instead of Kalra or Asia Pacific, to pay the legal fees associated with that litigation. The ability of TAL to incur and pay those fees "vastly exceeded" the ability of either Asia Pacific or Kalra to pay. (*See* ECF No. 21 ¶ 10(f)).

On February 13, 2012, ARC Capital, Inc. ("ARC") and Haida Investments, Ltd. both Chugh related entities, in response to the D. Conn. action, filed a Petition in the Grand Court of the Cayman Islands seeking to wind up TAL and to divide its assets between Kalra and Chugh (hereinafter, "Cayman wind-up proceedings"). Allegedly on the advice of the Defendants, Asia Pacific (the entity through which Kalra owned 50% of TAL), opposed the wind-up petition in the Cayman Court. In connection with the defense of the Cayman wind-up proceedings, the Defendants told the Plaintiffs that the Cayman wind-up proceedings can have "no effect on the U.S. proceedings," that the Judge in the U.S. proceedings "can never recognize any provisional liquidator appointed in the Cayman proceedings," and that "Chapter 15 [of the United States Bankruptcy Code] is an absolute bar to recognition of foreign liquidators in U.S. Courts unless the recognition requirements of Chapter 15 are met." (*Id*. ¶ 10(j)-(k)).

The Defendants further advised the Plaintiffs to assert Chugh's breach of fiduciary duty and related allegations as defenses in the Cayman wind-up proceedings, which they did. The Cayman Court held a trial in January 2013 and rejected each of the defenses asserted by Asia Pacific. Thereafter, in the D. Conn. action, Judge Underhill gave preclusive effect to the findings of the Cayman Court and the litigation concluded on that basis. *Trikona Advisers, Ltd. v. Chugh*,

3

No. 3:11-CV-2015 (SRU), 2015 WL 3581216, at *8 (D. Conn. June 5, 2015), *aff'd*, 846 F.3d 22 (2d Cir. 2017). That decision was affirmed by the Court of Appeals for the Second Circuit. *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 26 (2d Cir. 2017).

Moreover, the Cayman Court "relied heavily upon what [it] called a 'seizure of control' that had serious adverse consequences for Mr. Chugh and the petitioners ARC Capital and Haida Investments 'because it enabled [Kalra] to misuse the company's money for his own benefit.'" (ECF No. 21 ¶ 10(x)). The benefit referenced was the payment of the Defendants' invoices and fees in connection with the D. Conn. action. As a result, the Cayman Court ordered Kalra and Asia Pacific to pay $700,000 in costs. The Plaintiffs assert that both the rendering of the opinion letter as well as the advice regarding and the handling of the Cayman wind-up proceedings was legal malpractice.

In addition, the Plaintiffs allege in Count Two that the Defendants breached their fiduciary duty of loyalty to the Plaintiffs, specifically that the decision to remove Chugh as a director of TAL was "clearly designed to enrich [the Defendants]" at the expense of the clients' interests, given the impact of the Cayman Court's decision. (*Id*. ¶ 14(a)). The Plaintiffs further allege that the Defendants' decision to participate in the Cayman wind-up proceedings permitted the Defendants to extract large amounts of legal fees "that otherwise would not have been paid had defendants advised the plaintiffs not to participate in the Cayman proceeding because of the risk that an adverse decision would preclude and defeat the Connecticut federal breach of fiduciary duty action against Chugh." (*Id*. ¶ 14(b)). The Plaintiffs further aver that the Defendants, as a result, were "guilty of self-dealing and conflict of interest when they subordinated the interests of the plaintiffs to the pecuniary and financial interest of themselves." (*Id*. ¶ 14(d)). Finally, the Plaintiffs aver that the Defendants breached their fiduciary duty by "charging exorbitant fees,

4

churning hours needlessly, and falsely representing that they had expertise in areas of the law" at issue in the various forums. (*Id*. ¶ 14(e)).[1]

### The Instant Discovery Dispute

Defendants served written discovery on the Plaintiffs on or about April 24, 2019. (*See* ECF No. 50-3). The Plaintiffs did not object to the discovery but nor did they provide timely responses to the discovery. (*See* ECF No. 50-1). On May 31, 2019, the Court granted Plaintiffs' request (*nunc pro tunc*) that they be given until June 28, 2019 to respond to the Defendants' discovery. (ECF No. 45). The Plaintiffs did not provide responses by June 28, 2019. (*See* ECF No. 50-1). On September 26, 2019, the Plaintiffs filed an unopposed motion to modify the scheduling order, to include a modified deadline for responding to the April 2019 discovery. (ECF No. 47). Specifically, the motion provided: "Plaintiffs' Response to Defendants' discovery served in April 2019 shall be due by October 31, 2019. It is a condition of Defendants' consent to this motion that Plaintiffs shall interpose no objections to this discovery and will fully respond to it by October 31, 2019." (*Id*. at 2). The Court granted Plaintiffs' motion, but the Plaintiffs did not adequately respond to the discovery requests by October 31, 2019. (*See* ECF No. 50-1). On November 18, 2019, the Defendants filed a motion to compel and for sanctions seeking an order of immediate compliance and an award of attorneys' fees. (ECF No. 50). The Court convened a telephonic hearing on the motion on November 22, 2019. (ECF No. 52). The Court granted the motion to compel but upon Plaintiffs' request, extended the deadline to respond to the April 2019 discovery to December 13, 2019. (*Id*.). In doing so, the Court also admonished Plaintiffs that if Defendants were still concerned about the adequacy of the document production and/or compliance with the Court's

---

[1] The amended complaint's remaining allegations, to include a CUTPA claim and claims arising out of Defendants' settlement of a vexatious litigation claim brought by ARC against the Plaintiffs and the Defendants, were dismissed by this Court on January 24, 2019. (*See* ECF No. 39).

5

order, the Defendants would "be asking for sanctions to include precluding evidence of the damages previously claimed, and perhaps others." (ECF No. 59 at 10).[2] The Court also granted the Defendants' request for an award of attorneys' fees in connection with the November 18, 2019 motion to compel. (ECF No. 61). After receiving further submissions as to the amount of any such award, on April 28, 2020, the Court ordered Plaintiffs to pay $12,112.93 in attorneys' fees to the Defendants. (ECF No. 86).

Following the December 13, 2019 production of records and purported compliance with the Court's order, on January 17, 2020, Defendants filed the instant motion for sanctions in which they assert that Plaintiffs still did not adequately respond to the discovery on a number of different issues. Plaintiffs did not file a timely opposition to Defendants' motion. Therefore, Defendants filed a "reply" on February 14, 2020 reiterating its request in light of Plaintiffs' failure to respond. Thereafter, on February 20, 2020, without explanation or mention of the untimely nature of the opposition, Plaintiffs responded to Defendants' motion for sanctions. Defendants filed a reply on March 4, 2020 and Plaintiffs filed a sur-reply on March 6, 2020.

In the motion for sanctions, Defendants request the following relief: (1) an order precluding Plaintiffs from seeking certain categories of damages which they have identified but for which they have failed to produce documentary support; (2) an order requiring production of all files relating to the underlying litigations upon which this action is based, e.g., the Cayman wind-up proceedings and the D. Conn. action for the time period after the Defendants were no longer

---

[2] Plaintiffs provided documents to the Defendants on December 13, 2019 and the adequacy of that production is the subject of the instant motion for sanctions. However, on December 13, 2019, the Plaintiffs also filed a motion for a protective order seeking to preclude production of certain tax records which were sought in the April 2019 discovery requests. (ECF No. 53). Because the Plaintiffs had never objected to the request for these records; had represented time and again that records responsive to the April 2019 discovery requests would be produced without objection; and did not seek timely reconsideration of the Court's granting of the November 18, 2019 motion to compel requiring disclosure of these records by December 13, 2019, the Court denied the motion for protective order. (ECF No. 85). This ill-conceived and ill-fated motion for a protective order is exemplary of Plaintiffs' repeated efforts to thwart this Court's orders and to evade their own disclosure obligations.

6

counsel of record; and (3) an order requiring production of all ownership/organizational records for TAL and Asia Pacific, and communications involving those entities' directors and officers (or employees) relevant to the matters in dispute during the relevant time periods. Regarding Plaintiffs' claims for damages, Defendants assert that the only testable allegations supported by documentation are those related to the repayment of legal fees and the Cayman wind-up proceedings costs order. In this vein, Plaintiffs have claimed that their damages consist of the following: (1) loss of the value of TAL; (2) Asia Pacific's loss of the value of TAL; (3) Kalra's loss of the value of Asia Pacific; (4) Kalra's lost opportunity for an increase in capital; and (5) Kalra's lost investment opportunities.[3] Defendants assert that Plaintiffs have failed to provide any documentary support or explanation for these purported damages and seek therefore to preclude any claim for same.

On May 19, 2020, the Court held oral argument on Defendants' second motion for sanctions. At oral argument, unexpectedly, two significant issues arose: first whether Asia Pacific or Kalra had authority to bring this action on behalf of or in the name of TAL; and second, whether Kalra's "lost investment opportunities" claim for damages would be withdrawn in light of Plaintiffs' failure to quantify or identify the basis for this claim. Plaintiffs again requested a brief additional period of time within which to address both issues. Accordingly, in a separate text order, the Court ordered Plaintiffs to provide Defendants, by May 23, 2020, information regarding the current legal status of TAL vis a vis the other Plaintiffs, whether the Plaintiffs intended to maintain claims by TAL, and if so, the documentary record that supports Plaintiffs' authority to do so. (ECF

---

[3] The Defendants included a chart of the various damages identified by the Plaintiffs in their January 31, 2019 Initial Disclosures as well as the Plaintiffs' interrogatory responses dated December 13, 2019. (*See* ECF No. 60-1 at 5). Consistent with the unknowable nature of the Plaintiffs' claims in this regard, the Plaintiffs themselves provide vastly different assessments as to the losses occasioned within each of these categories. And as discussed above, to the extent the Plaintiffs identified the basis for the losses asserted, i.e. "the claim against QVT," Plaintiffs have failed to produce any documents or information related to these claims. Also as discussed above, the time to do so has passed.

No. 93). The Court further ordered Plaintiff to advise Defendants and the Court, by May 23, 2020, whether they would withdraw Kalra's lost investment opportunities claim. (*Id*.). On May 26, 2020, the Defendants filed a Notice with the Court (ECF No. 94) in which they advised the Court that the Plaintiffs did not provide proof that TAL is a proper plaintiff in this case and nor did Plaintiffs provide support for Kalra's "lost opportunity" damages claim.

Indeed, rather than meet this Court imposed obligation, on May 29, 2020, six days after compliance was due, Plaintiffs filed the instant motion for reconsideration. Therein, Plaintiffs assert that Kalra and Asia Pacific have the authority to bring this action on behalf of TAL or, in the alternative, that "Kalra/Asia Pacific have at least equal rights as any other entity or individual to cause TAL to bring this pending lawsuit." (ECF No. 96-1 at 4). Plaintiffs also indicated that they would not be withdrawing their claim for damages regarding Kalra's lost investment opportunities because their current counsel[4] believes that damages occurred even though substitute counsel needs to be obtained to properly investigate what damages could be proved. Lastly, Plaintiffs request that the Court reconsider its order directing Plaintiffs to pay Defendants $12,112.93 in attorneys' fees in connection with Defendants' first motion to compel the discovery at issue because Plaintiffs' former counsel was to blame for their non-compliance.[5] Plaintiffs did

---

[4] Following oral argument, it appears that the relationship between Plaintiffs and their counsel suffered an irretrievable breakdown. On May 21, 2020 counsel for Plaintiffs, Attorney Bowman, moved to withdraw as counsel. That same day, pro hac vice counsel Schrier filed an appearance on behalf of the Plaintiffs. The Court denied the motion to withdraw without prejudice because there was no substitute local counsel and nor had Attorney Schrier sought permission to appear without local counsel. (*See* ECF No. 93). Inexplicably, by September of 2020, substitute counsel had not appeared and Attorney Schrier had not filed a motion seeking to appear without local counsel. Accordingly, when Attorney Bowman renewed his request to be permitted to withdraw, the Court granted the motion and directed Plaintiffs to secure local counsel, or alternatively, to file a motion pursuant to Local Rule 83.1(c)(1) seeking permission for Attorney Schrier to appear without local counsel on or before October 14, 2020. (ECF No. 109).

[5] Plaintiffs also sought to essentially re-start the discovery clock in this litigation in light of the difficulties presented by their attempt to retain substitute counsel, (*see*, *e.g.*, ECF No. 100-1), requested an evidentiary hearing on the question of whether prior counsel or the Plaintiffs should pay the award of attorneys' fees, (ECF No. 96-1 at 9), and further sought additional time to provide the records heretofore withheld (*id. at* 8). These requests were, or are herein, denied.

not however provide any documentary support for their conclusory claim that they have the authority to assert claims on behalf of TAL.[6]

**Discussion**

    **Plaintiffs' Authority to Bring This Action on Behalf of TAL**

As indicated, on May 19, 2020, during oral argument on the motion for sanctions, an issue arose as to Plaintiffs Kalra and Asia Pacific's authority to bring an action on behalf of TAL. The Defendants had sought through the April 2019 discovery, but had not received, documentation regarding the status of TAL and the authority of either Kalra or Asia Pacific to bring claims on TAL's behalf. At the hearing, Plaintiffs acknowledged that all of TAL's assets were purchased by an entity not a party to this litigation in 2015 during the Cayman wind-up proceedings.[7] Accordingly, Defendants orally moved to dismiss TAL as a party to the action. To further the inquiry, the Court allowed Plaintiffs until May 23, 2020, to "provide [to Defendants] the requested information regarding the current status of TAL vis a vis the other Plaintiffs; whether the Plaintiffs intend to maintain claims by TAL as a Plaintiff, and if so, the documentary record that supports Plaintiffs' authority to do so." (ECF No. 93). As noted, rather than comply with the Court's order, by motion for reconsideration, Plaintiffs simply advance two arguments for their authority to bring this action on behalf of TAL. First, Plaintiffs argue that Defendants were "collaterally estopped from denying TAL's ability to bring the instant action" because Defendants, while they represented Plaintiffs in 2013, successfully argued that Asia Pacific and Kalra had authority to

---

[6] Plaintiffs did disclose a number of seemingly random documents related in part to TAL, the Cayman wind-up proceedings and other litigation involving these and other parties. None of the documents however address the question of Kalra's or Asia Pacific's purported authority to assert claims on behalf of TAL.

[7] TAL, as the subject of the wind-up proceedings may or may not exist beyond the conclusion of those proceedings, hence the purpose of a "windup." *See* Cayman Islands Companies Law V.152(1) (2018 Revision) ("When the affairs of the company have been completely wound up, the Court shall make an order that the company be dissolved from the date of that order or such other date as the Court thinks fit, and the company shall be dissolved accordingly."). Plaintiffs have failed or refused to provide the documentation from the wind-up proceeding that would permit this issue to be examined, let alone, resolved.

maintain actions on behalf of TAL in two separate actions. (ECF No. 96-1 at 3–4). Second, Plaintiffs argue that "Kalra/Asia Pacific have at least equal rights as any other entity or individual to cause TAL to bring this pending lawsuit" because when the entity purchased TAL's assets in 2015, the instant lawsuit was not yet one of TAL's assets. (*Id*. at 4).

Both arguments side-step, and perhaps even obfuscate, the issue. The Court ordered Plaintiffs to provide documentation to Defendants supporting Asia Pacific's or Kalra's authority to bring this action on behalf of TAL. Regardless as to whether Defendants are estopped from denying Asia Pacific's or Kalra's authority to bring an action on TAL's behalf[8] or whether Asia Pacific and Kalra have the theoretical right to bring a lawsuit on TAL's behalf, Plaintiffs still have not provided any documentary support showing that Asia Pacific and Kalra in fact have the authority to bring this action on TAL's behalf. Indeed, when Defendants asked TAL by interrogatory to "[i]dentify the board resolution or other actions by which [TAL] approved its bringing and participating in this suit in its own name," Plaintiffs simply responded, "[t]here is no board." (ECF No. 60-9 at 6). Because Plaintiffs failed to provide any documentation supporting Asia Pacific's or Kalra's authority to bring this action on TAL's behalf despite multiple Court orders that they do so, and in view of the substantial doubt that either party has such authority,[9] TAL is dismissed as a plaintiff from this action.

**Preclusion of Damages**

As indicated above, Defendants move to preclude Plaintiffs from seeking damages in the following categories: (1) loss of the value of TAL; (2) Asia Pacific's loss of the value of TAL; (3)

---

[8] It is unclear why a finding in 2013 that Asia Pacific and Kalra had authority to bring a lawsuit on TAL's behalf would collaterally estop Defendants from arguing that such authority did not exist in 2018 with respect to a separate cause of action which was brought after the wind-up proceedings were commenced. Plaintiffs offer no explanation, analysis, or authority on this point and the Court does not further address this claim.
[9] Indeed, documents provided by the Plaintiffs appear to reflect that TAL is still in court ordered liquidation which further undermines Plaintiffs' unsupported assertion that TAL is a proper plaintiff in this case.

10

Kalra's loss of the value of Asia Pacific; (4) Kalra's lost opportunity for an increase in capital; and (5) Kalra's lost investment opportunities. Although Plaintiffs assign large, shifting valuations to their claims for damages, Defendants argue that Plaintiffs "failed to produce the documents necessary for Defendants to evaluate or defend [such] vague, evolving and contradictory damages claims." (ECF No. 60-1 at 5). Defendants characterize Plaintiffs' discovery responses as almost entirely non-responsive to Defendants' requests. Significantly, according to Defendants, Plaintiffs did not produce documents to support their damages claims. For example, 8,300 of the 9,000 documents produced "are nothing more than documents that Defendant Gilleran himself actually prepared for production in 2012 in the underlying litigation," even though Defendants need documents from 2013 through 2019 in order to understand the bases of Plaintiffs' alleged damages. (*Id*. at 6–7). Thus, according to Defendants, the Court should preclude Plaintiffs from seeking damages on these claims given Plaintiffs' disregard for the discovery process and this Court's orders directing compliance with the discovery at issue.

Pursuant to Rule 37(b), if a party fails to obey a discovery order, the Court may issue an order "prohibiting the disobedient party from supporting . . . designated claims . . . or from introducing designated matters in evidence." FED. R. CIV. P. 37(b)(2)(A)(ii). "A district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37[.]" *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006). For example, in *John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.*, the Second Circuit upheld the dismissal of a party's complaint "for its failure to obey repeated orders to provide discovery" to an opposing party. 845 F.2d 1172, 1176 (2d Cir. 1988). There, the court found noteworthy that the non-compliant party "repeatedly refused to answer" the other party's interrogatories requesting that the non-compliant party "break down its damage claims, . . . specify how it calculated those damages,

11

identify the documents relied on to calculate the damages, identify the documents containing its calculations, and identify those individuals who participated in calculating the damages." *Id.* Despite multiple court orders directing the non-compliant party to specifically "answer each portion of the damages interrogatory," the non-compliant party "merely reiterated the unsupported damage amounts it had alleged since the beginning of the litigation [and] did not state how the amount was calculated, break down the damages into their components, nor identify the documents relied on in calculating damages." *Id*. Although the Second Circuit acknowledged that dismissal was a "drastic remedy," it agreed with the district court that the non-compliant party's "flagrant disregard of court orders . . . justified the imposition of the sanction of dismissal: [the non-compliant party] failed to provide any meaningful discovery concerning a core trial issue despite three clear court orders, which included two warnings that dismissal would follow if [the non-compliant party] failed to provide adequate responses[.]" *Id*. at 1176–77.

Similarly, here, Plaintiffs defied multiple Court orders directing Plaintiffs to comply with Defendants' discovery requests, which included a request to provide "[a]ll documents concerning Plaintiffs' January 31, 2019 Damage Analysis." (*See*, *e.g.*, ECF No. 60-3 at 7). First, on May 31, 2019, the Court ordered Plaintiffs to respond to Defendants' discovery requests by June 28, 2019. Second, after Plaintiffs failed to provide responses by June 28, 2019, the Court granted Plaintiffs' motion to modify the scheduling order and reset the deadline for Plaintiffs to respond to the discovery requests by October 31, 2019. Third, after Plaintiffs failed to adequately respond by October 31, 2019, Defendants filed a motion to compel and for sanctions, which the Court granted in part thereby resetting the response deadline to December 13, 2019. Further, during a telephonic hearing on the motion, the Court warned Plaintiffs that Defendants would "be asking for sanctions to include precluding evidence of the damages previously claimed, and perhaps others," if they

12

did not adequately respond to the requests. (ECF No. 59 at 10). Nevertheless, it is abundantly clear that Plaintiffs violated the Court's order, once again, by failing to adequately respond to Defendants' discovery requests by December 13, 2019 (or thereafter) resulting in the instant motion for sanctions. Indeed, Plaintiffs concede as much in the motion for reconsideration to the extent that current counsel believes "lost opportunity" damages can be proven but needs to engage substitute counsel to further investigate and develop that claim. This is an extraordinary concession on the record of this litigation.

Instead of providing documentary support for their damages claims, Plaintiffs merely assert that they are entitled to millions of dollars leaving Defendants without any ability to defend against their claims. For example, regarding the lost value claims, in response to Defendants' interrogatories, each Plaintiff lists a "claim against QVT" as an asset that contributes to the loss in value suffered by Kalra, Asia Pacific, and TAL. (ECF No. 60-7 at 9; ECF No. 60-8 at 9; ECF No. 60-9 at 10). However, at oral argument, Plaintiffs admitted that they had not produced any records relating to QVT. (*See* ECF No. 95 at 27 ("The Court: Have you produced any records that relate to this QVT or other asset of TAL, which you believe goes to your damages? [Plaintiffs' counsel]: Again, no.")). Similarly, Plaintiffs admitted that they had not produced any records relating to an "insurance claim" despite listing it as an asset that contributes to the loss in value suffered by Kalra, Asia Pacific, and TAL. (*See id*. at 26–27 ("The Court: . . . [H]ave you produced any records having to do with this insurance claim that you believe goes to the value of TAL? [Plaintiffs' counsel]: No.")). Instead, to support their lost value claims, Plaintiffs simply point to the damages claim set forth in the third amended complaint in the D. Conn. action because, according to Plaintiffs, Defendants' malpractice caused TAL to lose its affirmative claims in that action thereby entitling Plaintiffs to the damages claimed therein. Additionally, at oral argument, Plaintiffs argued

13

that Defendants know "very well that the value of [TAL] when it went into liquidation was twenty million dollars" without providing any documentary support for the claim. (*Id*. at 15).[10] Thus, the only document that possibly supports Plaintiffs' lost value claims is yet another unsupported damages claim in the D. Conn. action. Consequently, because Plaintiffs failed to provide documentary support for their lost value claims despite multiple Court orders mandating compliance, Plaintiffs are precluded from seeking damages based on the alleged loss of the value of TAL, Asia Pacific's loss of the value of TAL, and Kalra's loss of the value of Asia Pacific.

Likewise, Plaintiffs failed to provide documentary support for Kalra's damages based on his lost investment opportunities. First, in response to Defendants' motion for sanctions, Plaintiffs stated that "[Kalra had] been out of the country for a month, and we will advise as to what this claim consists of." (ECF No. 71 at 2). However, in their sur-reply, Plaintiffs asserted that, on December 13, 2019, they had forwarded discovery to Defendants regarding a lost investment opportunity. (ECF No. 75 at 1). Then, at oral argument, Plaintiffs acknowledged that they had not been able to quantify that investment opportunity and that they "may have to withdraw [the lost investment opportunities claim]." (ECF No. 95 at 4, 16). As discussed above, it was this colloquy that led to the Court's order that Plaintiffs advise Defendants and the Court by May 23, 2020 whether they would withdraw the "lost opportunity" claim for damages. And as noted, instead of complying with the Court's order, on May 29, 2020, Plaintiffs filed the instant motion for reconsideration in which they ask for more time to consider whether withdrawal would be appropriate because they had not yet fully analyzed the facts and documentary proof. So here we are. Despite multiple Court orders and the passage of significant time, Plaintiffs utterly failed to provide documentation supporting Kalra's damages based on lost investment opportunities, which

---

[10] Insofar as Plaintiffs have failed to produce the majority of the documents related to the Cayman wind-up proceeding, it is unclear on what basis if any, the Defendants "knew" TAL's valuation at the time of liquidation in that proceeding.

they originally claimed to be "[n]ot less than $15,000,000.00" on January 31, 2019, (ECF No. 50-3 at 3), but subsequently valued at "not less than $5,000,000.00," (ECF No. 60-7 at 9). Accordingly, Plaintiffs are precluded from seeking damages relating to Kalra's lost investment opportunities and their request for more time to investigate such claims is denied.

Plaintiffs also failed to provide documentary support for their calculations as to Kalra's lost opportunity for an "increase in capital" in the amount of "not less than $3,066,333.00." (*Id.*). According to Kalra's interrogatory responses, Plaintiffs calculated this amount of damages "by taking the total fees paid to Adler Pollock since 2011 and attributing a modest interest rate to the present date." (*Id.*). However, Defendants are unable to defend against this claim for damages as Plaintiffs did not provide any documentation or real-world analysis which would support the calculation. Indeed, this claim is little more than a request for prejudgment interest if Kalra is awarded the legal fees paid to the Defendants. Consequently, Plaintiffs are precluded from seeking damages based on Kalra's lost opportunity for an increase in capital.[11]

As the Second Circuit recognized in *John B. Hull*, the Court appreciates that precluding a party from seeking damages is a "drastic remedy." 845 F.2d at 1176. However, like the non-compliant party in *John B. Hull*, even though Plaintiffs were afforded multiple opportunities by the Court over an extended period of time to comply with the Court's orders and the discovery process, Plaintiffs chose to exhibit a "flagrant disregard" for the process which more than justifies this Court's decision to preclude Plaintiffs from seeking particular categories of damages. *Id*. at 1177. Indeed, Plaintiffs were warned that the Court may consider such sanctions during the telephonic hearing on Defendants' first motion to compel on November 22, 2019. (ECF No. 59 at 10). Of course, as Defendants acknowledge, Plaintiffs may still seek damages in this action, to

---

[11] Nothing herein precludes the Plaintiffs from seeking prejudgment interest as may be permitted under the law should the jury return a favorable verdict to the Plaintiffs.

15

include the legal fees paid to Defendants and the Cayman wind-up proceedings costs order, among others.

### Production of Documents

Defendants request that the Court order production of all files relating to the underlying litigations, including the D. Conn. action and the Cayman wind-up proceedings, along with any necessary releases to obtain those files from relevant counsel.[12] Additionally, Defendants request that the Court order production of all ownership and organizational status documents up to the present day for TAL and Asia Pacific along with communications involving those entities' directors, officers, and employees relevant to the subjects in dispute during all relevant times.

Regarding production of files relating to the underlying litigations, in their December 13, 2019 responses, Plaintiffs objected claiming that Defendants sought production of publicly accessible documents already in Defendants' possession. However, at oral argument, Defendants clarified that (1) they were not involved in many of the cases; (2) some of the records they seek are not publicly available, e.g., deposition transcripts; and (3) for the cases in which they were involved, they are requesting records post-dating their representation of Plaintiffs. (ECF No. 95 at 6–8). Thus, Plaintiffs' objection to the production is misdirected. More importantly, Plaintiffs already waived this objection when they failed to timely object to the April 2019 discovery, and then again when they moved to modify the scheduling order on September 26, 2019. (*See* ECF No. 47 at 2 ("Plaintiffs' Response to Defendants' discovery served in April 2019 shall be due by October 31, 2019. It is a condition of Defendants' consent to this motion that Plaintiffs shall interpose no objections to this discovery and will fully respond to it by October 31, 2019.")).

---

[12] On September 15, 2020, the Court ordered Plaintiffs to provide signed releases to Defendants to obtain files related to the Cayman wind-up proceedings. (ECF No. 111).

16

Regarding the corporate documents and communications for TAL and Asia Pacific, at oral argument, Plaintiffs' then-counsel indicated that he had not been provided "communications within Asia Pacific," (ECF No. 95 at 20), and that Asia Pacific has no bank accounts or financial statements (*id*. at 24). Plaintiffs' then-counsel also indicated that Plaintiffs did not have TAL's financial records or the communications between its directors, officers, and employees. (*Id*. at 9–10). Accordingly, based on Plaintiffs' representations, it is entirely unclear to the Court whether the categories of documents requested by Defendants are in Plaintiffs' possession or even exist.

However, to the extent the documents exist and are in Plaintiffs' possession, the Plaintiffs are ordered to produce to Defendants (1) all files relating to the underlying litigations identified in Defendants' discovery requests, along with releases to obtain those files from applicable counsel to the extent not already provided (*See* Kalra Document Request #7, ECF No. 60-7 at 12–13; Asia Pacific Document Request #10, ECF No. 60-8 at 11–12; TAL Document Request #11, ECF No. 60-9 at 12–13); (2) all ownership and organizational status documents up to the present day for TAL and Asia Pacific; and (3) communications involving TAL's and Asia Pacific's directors, officers, and employees relevant to the subjects in dispute during all relevant times. Production is due on or before February 21, 2021.

**Attorneys' Fees**

In their May 29, 2020 motion for reconsideration, Plaintiffs request that the Court reverse its April 28, 2020 Order requiring Plaintiffs to pay Defendants $12,112.93 in attorneys' fees, which the Court awarded Defendants in connection with its January 21, 2020 Order granting in part Defendants' first motion to compel and for sanctions. However, motions for reconsideration "shall be filed and served within seven (7) days of the filing of the decision or order from which such relief is sought[.]" D. CONN. L. CIV. R. 7(c)(1). Therefore, whether measured by the Court's

17

January 21, 2020 Order granting Defendants' motion or the Court's April 28, 2020 Order requiring Plaintiffs to pay Defendants $12,112.93 in attorneys' fees, Plaintiffs motion is untimely and is, therefore, denied. Plaintiffs shall pay Defendants $12,112.93 on or before February 21, 2021.[13]

Additionally, in light of the Court's decision granting Defendants' motion for sanctions, Defendants are entitled to their reasonable expenses in making the motion. Pursuant to Rule 37, "the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C). As discussed above, Plaintiffs continually violated this Court's orders, refused to appropriately participate in the discovery process, and offered little by way of justification for their noncompliance. In fact, Plaintiffs either maintain that their discovery responses are adequate or request more time for investigation despite multiple Court orders and more than enough time to respond to Defendants' requests originally propounded in April 2019. There being no substantial justification for Plaintiffs' noncompliance or other circumstances making an award of expenses unjust, Defendants shall be awarded their reasonable attorneys' fees in making their motion for sanctions.

An award of attorneys' fees pursuant to Rule 37 is calculated "according to the lodestar formula, in which the number of hours spent by the attorneys is multiplied by the hourly rate normally charged for similar work by attorneys of like skill in the area." *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 266 (S.D.N.Y. 1995) (quotation marks and citations omitted). The lodestar is the presumptively reasonable fee in determining the amount of attorneys' fees and costs warranted in connection with a motion for sanctions. *Congregation Rabbinical Coll.*

---

[13] Even if timely filed, the Plaintiffs' request that the Court sidetrack this already long-delayed litigation to essentially adjudicate the present disagreement between Plaintiffs and their former counsel is a remarkable invitation into the abyss which the Court respectfully declines.

*of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 337 (S.D.N.Y. 2016); *see also Friedman v. SThree PLC.*, No. 3:14CV00378(AWT), 2017 WL 4082678, at *3 (D. Conn. Sept. 15, 2017). The Defendants have not submitted any information to the Court regarding the time spent preparing the motion for sanctions or the hourly rates of the persons involved. The Court cannot therefore determine the lodestar or whether any adjustment to the lodestar is appropriate under the circumstances.

On or before February 21, 2021, the Defendants shall submit an affidavit of attorneys' fees to support their request from which the Court will determine an appropriate award. The Plaintiffs shall have the opportunity to contest the reasonableness of the award by objection on or before March 7, 2021.

**Conclusion**

For the foregoing reasons, Defendants' motion for sanctions is GRANTED. TAL is dismissed as a plaintiff from this action. Plaintiffs are precluded from seeking damages in the following categories: (1) loss of the value of TAL; (2) Asia Pacific's loss of the value of TAL; (3) Kalra's loss of the value of Asia Pacific; (4) Kalra's lost opportunity for an increase in capital; and (5) Kalra's lost investment opportunities. Plaintiffs are ordered to produce to Defendants (1) all files relating to the underlying litigations identified herein, along with releases to obtain those files from applicable counsel; (2) all ownership and organizational status documents up to the present day for TAL and Asia Pacific; and (3) communications involving TAL's and Asia Pacific's directors, officers, and employees relevant to the subjects in dispute during all relevant times on or before February 21, 2021. On or before February 21, 2021, the Defendants shall submit an affidavit of attorneys' fees to support their request for costs relating to the motion for sanctions from which the Court will determine an appropriate award. The Plaintiffs shall have the

opportunity to contest the reasonableness of the award by objection on or before March 7, 2021. Plaintiffs' motion for reconsideration is DENIED. Plaintiffs shall pay Defendants $12,112.93 in attorneys' fees on or before February 21, 2021. In light of the Court ordered discovery, the dispositive motion deadline is extended to March 15, 2021.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of January 2021.

                                             */s/ Kari A. Dooley*
                                             KARI A. DOOLEY
                                             UNITED STATES DISTRICT JUDGE