UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| AASHISH KALRA, ASIA PACIFIC VENTURES LIMITED,<br>*Plaintiffs*,<br><br>v.<br><br>ADLER POLLOCK & SHEEHAN, P.C., MICHAEL GILLERAN<br>*Defendant*s. | 3:18-CV-00260 (KAD)<br><br><br><br><br><br><br><br><br>JANUARY 31, 2022 |

**MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 135) AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 140)**

Kari A. Dooley, United States District Judge

Plaintiffs commenced this diversity action asserting both legal malpractice and breach of fiduciary duty claims against the Defendants Adler Pollock and Sheehan ("APS") and Attorney Michael Gilleran, Plaintiffs' former counsel. Pending before the Court are cross-motions for summary judgment. Both motions turn, in part, on whether the Plaintiffs may rely upon their proffered expert opinions or whether, as urged by the Defendants, the expert opinions should be precluded. Because the Court finds that the proffered expert opinions must be precluded, the Defendants' motion for summary judgment is GRANTED and the Plaintiffs' motion for summary judgment is DENIED.

**Standard of review**

The standard under which courts review motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing

1

law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).

**Facts**[1]

Plaintiff Asia Pacific Ventures Limited ("Asia Pacific") was a fifty percent owner of Trikona Advisers Limited ("TAL"), a Cayman Island entity. Plaintiff Aashish Kalra is the controlling principal of Asia Pacific. TAL was also fifty percent owned either by Rakshitt Chugh or entities controlled by him, ARC Capital LLC ("ARC") and Haida Investments Ltd. ("Haida"). Kalra and Chugh formed TAL as an entity through which they would invest in real estate markets in India. Kalra and Chugh were the shareholder members of the Board of Directors. There were two additional Board members—Ravindra Chitnis and Saurabh Killa.

Following a substantial decline in TAL's business in 2008, the relationship between Kalra and Chugh deteriorated. Kalra began to assert that Chugh was self-dealing to the detriment of TAL and wanted him removed from TAL's Board of Directors and operations.

Plaintiffs hired the Defendants in or around April of 2011 to offer legal counsel and representation regarding Kalra's concerns. Defendant Gilleran was the primary attorney at APS

---

[1] The facts set forth are not in dispute, unless otherwise indicated. Ultimately, the Court's decision does not turn on the existence of disputed material facts or competing evidence regarding the same. Accordingly, the Court includes herein a summarized version of the events at issue.

2

with whom the Plaintiffs interacted. On December 28, 2011, the Plaintiffs, represented by the Defendants, brought suit against Chugh and his related entities in the District of Connecticut, *Trikona Advisers Ltd. et al. v. Chugh et al.*, No. 3:11-CV-2015 (SRU) (D. Conn. Dec. 28, 2011) ("D. Conn. action"). Therein, the Plaintiffs asserted claims that Chugh breached his fiduciary duties in a variety of ways as well as additional claims arising out of the parties' joint interest in TAL. In the D. Conn. action, the Court granted the Plaintiffs a prejudgment remedy and, on April 9, 2012, Chugh posted a one million dollar bond in lieu thereof.

With respect to the removal of Chugh from the TAL Board of Directors, the Defendants and the Plaintiffs consulted with Cayman lawyers to determine the available options under Cayman law. The Defendants, in conjunction with Cayman lawyers, also undertook an examination of TAL's Articles of Association. Ultimately, in January of 2012, the Defendants rendered an opinion letter to director Chitnis that concluded that Chugh could be removed from the TAL Board of Directors without notice and without the need to convene a Board of Directors meeting. They opined that, under TAL's Articles of Association, Chugh could be removed by a resolution in writing signed by all of the Directors, other than the director being removed. At that time, Kalra, Chugh, Chitnis, and Killa were the only directors of TAL.

The Defendants' purported motive in offering this opinion was to allow TAL to be substituted as the plaintiff in the D. Conn. action, thereby requiring TAL, instead of Kalra or Asia Pacific, to pay the legal fees associated with that litigation. As Plaintiffs allege, the ability of TAL to incur and pay those fees "vastly exceeded" the ability of either Asia Pacific or Kalra to pay. (*See* ECF No. 21 ¶ 10(f)).

Prior to any such resolution being signed, Chitnis resigned from the Board on January 10, 2012. On January 11, 2012, Killa and Kalra signed the written resolution by which Chugh was removed as a director.

On February 13, 2012, ARC and Haida filed a Petition in the Grand Court of the Cayman Islands seeking to wind-up TAL and to divide its assets between Kalra and Chugh ("Cayman wind-up proceedings"). Plaintiffs consulted with Defendants and Cayman lawyers regarding litigation strategies. Allegedly on the advice of the Defendants but while represented by Cayman counsel, Kalra, through Asia Pacific, opposed the wind-up petition in the Cayman Court. In contesting the Cayman wind-up proceedings, Asia Pacific asserted the same claims that had been asserted in the D. Conn. action, to wit, that Chugh had breached his fiduciary duties to TAL, Asia Pacific and Kalra.

Plaintiffs allege that the Defendants told the Plaintiffs that the Cayman wind-up proceedings would have "no effect" on the D. Conn. action, that the Court in the D. Conn. action would "never recognize any provisional liquidator appointed in the Cayman [wind-up] proceedings," and that "Chapter 15 [of the United States Bankruptcy Code] is an absolute bar to recognition of foreign liquidators in U.S. Courts unless the recognition requirements of Chapter 15 are met." (ECF No. 21 ¶ 10(j)-(k)).

The Cayman wind-up proceedings advanced to trial before the D. Conn. action despite Defendants' and Plaintiffs' efforts to have the D. Conn. action adjudicated prior to the Cayman wind-up proceeding. After the trial, the Cayman Court issued a decision in which it rejected the defenses asserted by Asia Pacific. The Cayman Court stated, "Mr. Kalra's subsequent attempt to accuse Mr. Chugh of stealing Trikona's assets and destroying a lucrative business is completely at odds with the evidence of what actually happened at the time." *In Re Trikona Advisors Limited*,

*ARC Capital LLC v. Asia Pacific Limited* [2012] FSD 18 (AJJ), at 4 (Cayman Is. GC Jan. 31, 2013). The Cayman Court found Kalra's accusations against Chugh "wholly unsupported by any credible evidence." *Id*. at 7. The Cayman Court was particularly troubled by the circumstances under which Chugh was removed as a director and Kalra then seized control of TAL and its assets. *See id*. at 9 ("Mr. Kalra's seizure of managerial control was unjustifiable and contrary to the Petitioners' legitimate expectations."). Ultimately, the Cayman Court determined that a wind-up with independent liquidators was appropriate and granted the Petitioner's the relief sought. *Id*. at 17.

Following the Cayman Court decision, upon motion of Chugh and his related entities in the D. Conn. action, the Court gave preclusive effect to the findings of the Cayman Court and the litigation concluded on that basis. *Trikona Advisers, Ltd. v. Chugh*, No. 3:11-CV-2015 (SRU), 2015 WL 3581216, at *8 (D. Conn. June 5, 2015), *aff'd*, 846 F.3d 22 (2d Cir. 2017). That decision was affirmed by the Court of Appeals for the Second Circuit. *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22 (2d Cir. 2017).

The Plaintiffs claim in Count One of the Amended Complaint both that the Defendants' rendering of the opinion letter regarding the removal of Chugh from the Board of Directors as well as their advice regarding and the handling of the Cayman wind-up proceedings was legal malpractice. (ECF No. 21 ¶ 10(y-z)). In addition, the Plaintiffs claim in Count Two of the Amended Complaint that the Defendants breached their fiduciary duty of loyalty to the Plaintiffs. Specifically, Plaintiffs allege that the decision to remove Chugh as a director of TAL was for the purpose of enriching the Defendants at the expense of the Plaintiffs, in essence self-dealing. (*Id*. ¶ 14(c)). The Plaintiffs further allege that the Defendants' decision to participate in the Cayman wind-up proceedings permitted the Defendants to extract large amounts of legal fees "that

otherwise would not have been paid had [D]efendants advised the [P]laintiffs not to participate in the Cayman [wind-up] proceeding because of the risk that an adverse decision would preclude and defeat the . . . [D. Conn. Action] against Chugh." (*Id*. ¶ 14(b)). Finally, the Plaintiffs aver that the Defendants breached their fiduciary duty by "charging exorbitant fees, churning hours needlessly, and falsely representing that they had expertise in areas of the law" at issue in the various forums. (*Id*. ¶ 14(e)).[2]

**Discussion**

"Connecticut law defines malpractice as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services. . . . The elements of a legal malpractice cause of action are (1) a duty on the part of the lawyer to conform to a particular standard of conduct for the plaintiff's protection; (2) a failure by the attorney to measure up to that standard; (3) an actual injury suffered by the plaintiff; (4) for which the attorney's conduct was the proximate cause." *Tatum v. Oberg*, 804 F. Supp. 2d 88, 94 (D. Conn. 2011) (citing *Dixon v. Bromson and Reiner*, 95 Conn. App. 294, 297, 898 A.2d 193 (2006); *LaBieniec v. Baker*, 11 Conn. App. 199, 202–03, 526 A.2d 1341 (1987)) (citations omitted; internal quotation marks omitted).

Generally, to prevail on a legal malpractice claim in Connecticut, a plaintiff "must present expert testimony to establish the standard of proper professional skill or care. . . . Not only must the plaintiffs establish the standard of care, but they must also establish that the defendant's conduct 'legally caused' the injury of which they complain." *Dunn v. Peter L. Leepson, P.C.,* 79 Conn.

---

[2] The remaining allegations set forth in the Amended Complaint, to include a CUTPA claim and claims arising out of Defendants' settlement of a vexatious litigation action brought by ARC against the Plaintiffs and the Defendants, were dismissed by this Court on January 24, 2019. (*See* ECF No. 39).

6

App. 366, 369, 830 A.2d 325, *cert. denied*, 266 Conn. 923, 835 A.2d 472 (2003) (citation omitted; internal quotation marks omitted). The purpose of requiring expert testimony in malpractice cases is "to assist lay people, such as members of the jury and the presiding judge, to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard." *Dubreuil v. Witt,* 80 Conn. App. 410, 420, 835 A.2d 477 (2003), *cert. granted on other grounds*, 268 Conn. 903, 845 A.2d 407 (2004). Accordingly, a plaintiff's malpractice claim will fail if the plaintiff does not offer the necessary expert testimony. *See Vona v. Lerner,* 72 Conn. App. 179, 189–92, 804 A.2d 1018 (2002), *cert. denied*, 262 Conn. 938, 815 A.2d 138 (2003) (holding that trial court properly granted defendants' motion for directed verdict on claim of legal malpractice in absence of expert testimony as to proximate cause); *see Somma v. Gracey,* 15 Conn. App. 371, 374–75 (1988) (requiring expert testimony that breach of professional standard of care occurred and that breach was proximate cause of injuries suffered by plaintiff to establish legal malpractice); *see also Byrne v. Grasso*, 118 Conn. App. 444, 449, 985 A.2d 1064 (2009), *cert. denied*, 294 Conn. 934, 987 A.2d 1028 (2010) (holding that trial court properly granted defendant's motion for summary judgment on claim of legal malpractice where plaintiff's expert testimony was precluded on basis of noncompliance with expert disclosure requirements).[3]

In the attorney-client context, the same is often true with respect to breach of fiduciary duty claims.[4] *See Marciano v. Kraner,* 126 Conn. App. 171, 178–79, 10 A.3d 572, *cert. denied*, 300

---

[3] "There is an exception to this rule, however, where there is such an obvious and gross want of care and skill that neglect is clear even to a lay person." *Paul v. Gordon,* 58 Conn. App. 724, 727 (2000). But "[t]he exception to the need for expert testimony is limited to situations in which the defendant attorney essentially has done nothing whatsoever to represent his or her client's interests. . . ." *Grimm v. Fox,* 303 Conn. 322, 330, (2012). While the Plaintiffs summarily and without analysis invoke this exception in their reply memorandum in support of their motion for summary judgment, the Plaintiffs' argument is misplaced. This case involves, *inter alia,* complicated and sophisticated questions of corporate governance as well as litigation strategies across multiple forums. Expert testimony as to both the applicable standard of care and causation is required to establish Plaintiffs' claims.

[4] A cause of action for breach of fiduciary duty requires the plaintiff to establish: "[1] [t]hat a fiduciary relationship existed which gave rise to . . . a duty of loyalty . . . an obligation . . . to act in the best interests of the plaintiff, and . . . an obligation . . . to act in good faith in any matter relating to the plaintiff; [2] [t]hat the defendant advanced his or

Conn. 922, 14 A.3d 1007 (2011) ("Although every attorney-client relationship imposes a fiduciary duty on the attorney . . . a plaintiff cannot avoid [the] burden to present expert testimony to articulate the contours of that relationship by styling [the] cause of action as one for breach of fiduciary duty." (Citation omitted.)); *see also Bozelko v. Papastavros*, 156 Conn. App. 124, 133 n.6 (2015), *aff'd*, 323 Conn. 275, 147 A.2d 1023 (2016) (holding that trial court properly granted defendant's motion for summary judgment on breach of fiduciary duty claim in absence of expert testimony). The Plaintiffs claim a breach of fiduciary duty with respect to, *inter alia*, the Defendants' purported motivations and self-dealing in connection with the advice Defendants provided regarding the removal of Chugh from the Board of Directors and litigation strategies in the Cayman wind-up proceedings. These claims also implicate the roll of an attorney, the contours of the professional relationship between attorney and client and, like the malpractice claim, the propriety of the advice given. The Court concludes therefore that expert testimony is necessary to explain such matters to the lay jury so that the jury might assess the Defendants conduct in light of that testimony.

**The Expert Disclosures**

Here, in seeking summary judgment, Defendants assert, principally, that the Plaintiffs cannot prevail on either the legal malpractice claim or the breach of fiduciary duty claim because Plaintiffs failed to properly disclose an expert on the applicable standard of care or whether any breach of that standard caused the Plaintiffs damages. Defendants rely on both the expert disclosure provided by the Plaintiffs on March 2, 2020 naming Attorney John O. Mirick as an expert ("March 2020 expert disclosure") as well as Attorney Mirick's deposition. In response,

---

her own interests to the detriment of the plaintiff; [3] [t]hat the plaintiff sustained damages; [and] [4] [t]hat the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty." *Dressler v. Riccio*, 205 Conn. App. 533, 546–47, 259 A.3d 14 (2021) (alterations in original).

Plaintiffs argue that Attorney Mirick provided the expert opinions necessary to both defeat the Defendants' motion and to establish their claims. Plaintiffs do not acknowledge Defendants' argument that Attorney Mirick's March 2020 expert disclosure and deposition testimony fail to provide the requisite expert opinions. Rather, Plaintiffs rely largely upon two affidavits executed by Attorney Mirick on March 12, 2021 and April 5, 2021 and submitted for the first time in conjunction with summary judgment proceedings ("summary judgment affidavits").[5] These affidavits were not previously disclosed or available to the Defendants. Not surprisingly, in reply, the Defendants argue that the opinions of Attorney Mirick now offered at the summary judgment stage bear little resemblance to the March 2020 expert disclosure made during discovery and on which he was deposed, and any opinions contained in the summary judgment affidavits should be precluded pursuant to Fed. R. Civ. P. 37(c) as a sanction for Plaintiffs' failure to comply with Fed. R. Civ. P. 26(a).[6] Defendants further assert that without the expert testimony set forth in the summary judgment affidavits, summary judgment is required. Plaintiffs' respond that the summary judgment affidavits do not contain "never before disclosed expert testimony" and that the opinions contained therein, though explained in greater detail, are no broader than the March 2020 expert disclosure.

Under Fed. R. Civ. P. 26(a)(2), parties must timely disclose the identity of witnesses who will present expert testimony pursuant to, *inter alia*, Fed. R. Evid. 702. *Dynamic Concepts, Inc. v. Tri-State Surgical Supply and Equipment Ltd.,* 716 Fed. App'x 5, 12 (2d Cir. 2017). Specifically,

---

[5] The Plaintiffs submitted one affidavit in support of their motion for summary judgment and a second affidavit in opposition to the Defendants' motion for summary judgment. The second affidavit incorporates the content of and exhibits to the first affidavit.

[6] The identical issue is framed in the Plaintiffs' motion for summary judgment. Plaintiffs rely upon the summary judgment affidavits in seeking summary judgment in their favor. And in response, the Defendants seek to preclude consideration of the summary judgment affidavits. In reply, the Plaintiffs assert that the summary judgment affidavits do not materially alter the expert's opinion and are properly before the Court. Resolution of this issue is therefore determinative of both motions for summary judgment.

a party must provide from its expert "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). "The expert's report operates to limit the scope of the testimony that can be elicited from the expert. Opinions that are not disclosed in the expert's report cannot be offered." *Canales v. United States,* 2021 WL 1588809, at *2–3 (E.D.N.Y. Apr. 22, 2021), *aff'd*, 2021 WL 5830765 (E.D.N.Y. Dec. 8, 2021). "It is assumed that at the time an expert issues his report, that report reflects his full knowledge and complete opinions on the issues for which his opinion has been sought." *Id.*[7]

> The interest served by requiring the disclosure of expert opinions is self evident. It is to prevent unfair surprise at trial and to permit the opposing party to prepare for the expert's cross-examination. By "locking" the expert witness into what Fed. R. Civ. P. 26(a)(2)(B) calls "a complete statement of all opinions to be expressed and the basis and reasons therefor," the opposing party knows exactly what [he or] she is facing and can decide whether to take the deposition of the expert and to prepare for cross-examination and rebuttal. When the expert supplements [his or] her report by addressing a new matter after discovery has ended, the very purpose of the rule is nullified.

*Coles v. Perry*, No. 01-0732 (JMF), 217 F.R.D. 1, 4 (D.D.C. June 27, 2003).

"If a party fails to . . . identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The purpose of [Rule 37(c)] is to prevent the practice of sandbagging an adversary with new evidence." *Canales,* 2021 WL 1588809, at *3 (alteration in original). To determine whether preclusion of testimony under Rule 37 is an appropriate sanction for failure to meet disclosure requirements, the

---

[7] Although not germane here, under Fed. R. Civ. P. 26(e)(1)(A), a party must supplement its Rule 26(a) expert disclosures when that "party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." "Rule 26(e) is not, however, a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report." *Canales,* 2021 WL 1588809, at *3. "If an expert's report does not rely [on] any information that was previously unknown or unavailable to him, it is not an appropriate supplemental report under Rule 26." *Id.* (internal quotation marks omitted). Here, Plaintiffs do not assert that the summary judgment affidavits were properly submitted pursuant to Rule 26(e).

Court applies a four-factor test. *See Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (reviewing trial court's preclusion of expert testimony pursuant to Rule 37). The Court considers: (1) the party's explanation for the failure to comply with the discovery order;[8] (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *Id*. The balancing of these factors is entrusted to the Court's discretion, and no one factor is dispositive. *See, e.g.*, *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 263 F.Supp.3d 446, 452 (S.D.N.Y. 2017) (concluding that it was properly within the Court's discretion to exclude expert testimony after considering these principles).

Before turning to the four-factor test, the Court first must determine whether the summary judgment affidavits constitute untimely expert opinions, as argued by the Defendants, pursuant to Rule 26(a). As discussed, the Plaintiffs posit that there is nothing improper about the summary judgment affidavits as they are consistent with the March 2020 disclosure, which was, on its face "tentative."

Discovery in this matter closed on October 31, 2020. (ECF No. 110). Plaintiff's expert, Attorney Mirick, issued a report and opinion dated March 2, 2020. (ECF No. 140-4). The Plaintiffs' expert disclosure deadline was the following day, March 3, 2020. (ECF No. 62). Attorney Mirick was deposed on June 8, 2020. (ECF No. 140-3). The March 2020 expert disclosure was five pages. The first page and a half describe the expert's qualifications, practice area and engagement fees. Attorney Mirick then identifies the materials he reviewed, which consisted exclusively of the Plaintiffs' proposed Second Amended Complaint, the parties' operative pleadings and exhibits thereto, as well as the underlying decisions of the Cayman Court

---

[8] Plaintiffs do not concede that the affidavits constitute a violation of the discovery orders in this matter, so no explanation was provided.

and the Second Circuit.[9] Thereafter Attorney Mirick observes: "I note that [Defendants] deny most factual allegations in the Second Amended Complaint, and state that most documents identified or quoted in the Second Amended complaint 'speak for themselves.' As a result, my opinion is tentative, and subject to possible revision when discovery is complete."[10] (ECF No. 140-4, at 3). Attorney Mirick then offers a summary of material facts which largely mirror the uncontested timeline of both the Cayman wind-up proceedings and the D. Conn. action proceedings. Finally, Attorney Mirick offers the following opinions: (1) Defendants violated Rule 1.1 of the Massachusetts Rules of Professional Conduct ("MRPC"), which requires an attorney to provide competent representation, on the basis that "there is no showing that [Defendants] were competent to provide representation in a proceeding in the Grand Court of Cayman to oppose the wind-up proceeding" or "to provide advice and representation on matters of Cayman law with respect to [the] removal of a director;" and (2) Defendants violated MRPC Rule 1.4(b), which requires an attorney to explain matters to the extent reasonably necessary to permit clients to make informed decisions regarding the representation, on the basis that Attorney Mirick had "seen nothing to indicate that there were any such explanations in connection with the removal of Mr. Chugh, or with the decision to defend the wind-up proceeding in Cayman rather than to proceed promptly with the prior pending [D. Conn. action]."[11] (ECF No. 140-4, at 4-5). Attorney Mirick concludes

---

[9] Prior to the March 2020 expert disclosure, Attorney Mirick did not speak with Kalra on substance, did not review Defendants' billing records, did not review email communications between Plaintiffs and Defendants, and did not review motions or trial testimony with respect to the Cayman wind-up proceedings or the D. Conn. Action. (ECF No. 140-3, at 4).

[10] Indeed, at his June 8, 2020 deposition, Attorney Mirick consistently referred to the March 2020 expert disclosure as his "tentative opinion." (ECF No. 140-3, at 4, 8).

[11] Attorney Mirick also opined that Defendants violated MRPC Rule 4.1, which requires truthfulness in the course of representing a client, on the basis of the finding that a press release purportedly drafted and published by the Defendants was libel per se. Attorney Mirick's opinions set forth in the March 2020 expert disclosure relied, in part, on the allegations set forth in a proposed Second Amended Complaint, which contained an allegation of libel per se on the basis of a March 13, 2013 press release purportedly drafted and published by the Defendants. On August 2, 2020, the Court denied Plaintiffs' motion to amend the complaint and, accordingly, the Second Amended Complaint is not operative in this proceeding. (ECF No. 101).

his report as follows: "In the absence of focused discovery, including depositions of the parties, I can only make the general observations set forth above. When you have completed discovery, I can be available to review that discovery and revisit these issues, including attorney malpractice and breach of fiduciary duty." *Id.* at 6. By his own acknowledgement, Attorney Mirick offered no opinions regarding the underlying causes of action—legal malpractice or breach of fiduciary duty.[12]

This concession notwithstanding, the Court has reviewed the summary judgment affidavits to determine whether they contain new and previously undisclosed expert opinions or whether, as urged by Plaintiffs, they do not. In light of that review, the Court concludes that it is disingenuous, at best, to assert, as Plaintiffs now do, that the opinions offered in the summary judgment affidavits are no broader than the "tentative" opinions offered in the March 2020 expert disclosure. Unfortunately, Plaintiffs' argument is entirely consistent with their well-documented and unrelenting dilatory approach to their disclosure obligations in this litigation. Under any reading of the summary judgment affidavits, they offer new, previously undisclosed expert opinions. *See Point Prods. A.G. v. Sony Music Ent., Inc.*, No. 93 Civ. 4001(NRB), 2004 WL 345551, *9 (S.D.N.Y. Feb. 23, 2004) ("To accept the contention that the new affidavits merely support an initial position when they in fact expound a wholly new and complex approach designed to fill a significant and logical gap in the first report would eviscerate the purpose of the expert disclosure rules.").

Preliminarily, the summary judgment affidavits identify a significantly larger number of materials reviewed and relied upon in rendering the conclusions contained therein, to include, *inter*

---

[12] At his June 8, 2020 deposition, Attorney Mirick explained that "I have not been asked to and have not done a causation analysis." (ECF No. 140-3, at 22).

*alia,* an affidavit of Kalra,[13] documents disclosed during discovery and deposition transcripts. (ECF No. 145-2, at 2-3, ¶ 7-8). The summary judgment affidavits then review in pain-staking detail the communications between various persons regarding the removal of Chugh from the Board of Directors and Defendant Gilleran's conduct throughout. (*See id.* at 14, ¶ 43) ("It is more than clear that Attorney Gilleran had his mind made up as to how he was going to advise Kalra on how to proceed and was looking to Cayman counsel to justify his strategy" which allegedly included getting TAL to take over the D. Conn. action and pay for the litigation expenses associated therewith.). Ultimately, Attorney Mirick describes what he believes the standard of care under these circumstances required and then opined that "Attorney Gilleran deviated from the standard of care and practice that a reasonable attorney would and should exercise and that a client should receive in his advice and representation of Kalra in removing Chugh as a director." (*Id.* at 23, ¶ 67). Attorney Mirick then identifies the factual predicate (and discovery it is based upon) for this opinion over the course of the following ten pages of his affidavits. The affidavits further opine that Defendant Gilleran's breach of the stand of care, as set forth in great detail, caused the Plaintiffs damages, which he also sets forth in great detail.

These opinions and their factual predicate appear nowhere in the March 2020 expert disclosure. While a careful reader could find some thin sliver of overlap between the summary judgment affidavits and the March 2020 expert disclosure, the difference in length, scope and content render them well more dissimilar than similar. Further, there can be little question that the information relied upon by Attorney Mirick was available to him at the time he rendered the March 2020 opinions. The assertions in Plaintiff Kalra's affidavit, while perhaps not yet in affidavit form,

---

[13] The Court notes that in setting forth his opinions in the summary judgment affidavits, Attorney Mirick accepts as accurate Kalra's narrative regarding the events in question, a narrative that includes many inadmissible lay opinions as to the motive and intent of others.

were available to the expert. Indeed, the affidavit itself is a detailed narrative of what had been Plaintiff's narrative from the inception of this litigation. Further, the documented communications on which the opinions are based and which are attached or cited in the summary judgment affidavits are dated between August 3, 2010 and January 17, 2012 and were unquestionably in Plaintiffs' possession prior to the March 2020 report. (ECF No. 145-7; ECF No. 145-24). Accordingly, the Court concludes that the summary judgment affidavits are improper and untimely expert opinions under Rule 26(a).

Turning to the *Softel* factors, the Court first observes that the "explanation" for the late disclosure factor favors preclusion insofar as the Plaintiffs have offered no explanation, and instead opted to take the untenable position that the affidavits do not amount to a new or untimely expert disclosure. And it is difficult to imagine what such an explanation might look like. Fact and expert discovery in this case closed months before the summary judgment deadline. And it appears that it was only after these deadlines had long passed, that the Plaintiffs undertook in earnest any effort to obtain an expert opinion as to the allegations in the Amended Complaint. This case has been pending for almost four years and it has been delayed time and again by Plaintiffs' unwillingness to meet court-imposed deadlines or their discovery obligations. The utter failure to identify and provide timely expert disclosures on the very issues raised in the complaint is difficult to comprehend in terms of litigation strategy and it is not to be condoned.

As to the importance of the witness, there is little question that these opinions, however late, are essential to the Plaintiffs' case. Without expert testimony as to the standard of care and/or causation, the Plaintiffs' case fails. *See Dunn,* 79 Conn. App. at 369 (requiring expert testimony on standard of care and causation to support legal malpractice claims); *see also Marciano*, 126 Conn. App. at 178–79 (requiring expert testimony to support claim of breach of fiduciary duty).

As to prejudice to the Defendants if the court were to permit the untimely disclosure, the prejudice to the Defendants is extraordinary. The Defendants had no opportunity to challenge the substance of the opinions set forth in the summary judgment affidavits at Attorney Mirick's deposition, no opportunity to share them with their own expert, no opportunity to explore, at deposition or otherwise, the predicate documents on which the opinions are based, to include significantly, the February 12, 2021 affidavit of Kalra. The prejudice inflicted in situations such as this is precisely why the rules are designed to avoid trial by ambush. *See Canales,* 2021 WL 1588809, at *3.

Finally, the Court must consider the viability of a continuance in order to mitigate the prejudice to the Defendants while recognizing the essential nature of the witness to the Plaintiffs. A continuance at this juncture is, in the Court's view, unwarranted. The case is at the summary judgment phase and Plaintiffs elected to disclose their expert through their motion for summary judgment. This alone is reason not to continue the matter as it might countenance if not encourage such litigation tactics. Beyond such an undeserved reward, however, is the extraordinary delay and cost which would be occasioned by the continuance that would be required to dismantle the prejudice to the Defendants. The Court would have to re-open discovery; permit Attorney Mirick to be deposed; allow for Defendants' expert to review Attorney Mirick's opinions regarding standard of care and causation; and permit a supplemental report from Defendants' expert if it was deemed warranted. These undertakings will take time, perhaps months, and will require an additional expenditure of substantial resources only to bring the case back to where it is now—the summary judgment phase. And even allowing for these events, the Defendants would still have

expended significant resources on their summary judgment submission, time which cannot be recouped.[14]

For these reasons, any opinions offered by Attorney Mirick which do not appear in the initial disclosure are precluded pursuant to Rule 37(c).

**Defendants' Motion for Summary Judgment**

Summary Judgment is appropriate where expert testimony, though necessary to prevail, is absent. *See Lippe v. Bairnco Corp.*, 99 Fed. App'x 274, 282 (2d Cir. 2004) (summary order) (affirming summary judgment following the proper exclusion of plaintiff's valuation expert where expert testimony on valuation of assets was necessary to plaintiff's claim); *Buckley v. Deloitte & Touche USA LLP*, 541 F. App'x 62, 64 (2d Cir. 2013) (summary order) (affirming summary judgment finding there to be insufficient evidence to support an essential element of plaintiff's breach of contract claim due to the proper exclusion of expert testimony); *Sanders v. Fireline, Inc.*, 295 F. App'x 373, 374–75 (2d Cir. 2008) (summary order) (affirming summary judgment on the basis of the proper exclusion of plaintiff's expert testimony, which was necessary to establish plaintiff's personal injury claim); *Bambarger v. Ameristep, Inc.*, 2013 WL 6222540, at *2 (W.D. Va. 2013) (granting summary judgment where expert testimony necessary to sustaining the plaintiff's claim was precluded). As discussed above, the March 2020 expert disclosure does not contain any opinions as to the applicable standard of care at issue in this litigation or whether a breach of the standard of care caused the Plaintiffs damages. Neither did Attorney Mirick's deposition provide such opinions. As expert testimony on these issues is required; *Dunn,* 79 Conn.

---

[14] The Court recognizes that it could, in its discretion, order the Plaintiffs to pay the Defendants' attorneys' fees in connection which the preparation of the Defendants' summary judgment motion. This Court has twice ordered the Plaintiffs to pay substantial attorneys' fees to the Defendants as a result of their dilatory discovery practices. Those orders do not appear to have influenced Plaintiffs' decision to ambush the Defendants with a new expert opinion. Accordingly, the Court does not consider such an award an appropriate alternative to preclusion.

App. at 369; *Marciano*, 126 Conn. App. at 178–79; absent same, the Plaintiffs' claims fail and the Defendants' motion for summary judgment is GRANTED.

### Plaintiffs' Motion for Summary Judgment

In seeking summary judgment, Plaintiffs rely upon the same expert affidavit as establishing the requisite proof of their claims. In opposition to the motion for summary judgment, the defendants argue, principally, that the expert affidavit is an untimely expert disclosure and should be precluded. As discussed above, the Court agrees with the Defendants. Accordingly, for the same reason the Court grants the Defendants' motion for summary judgment, the Plaintiffs' motion for summary judgment is denied.

**Conclusion**

For all of the foregoing reasons, the Defendants' motion for summary judgment is GRANTED. Plaintiffs' motion for summary judgment is DENIED.

The Clerk of the Court is directed to enter judgment in favor of the Defendants on the Plaintiffs' Complaint.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of January 2022.

                                    */s/ Kari A. Dooley*
                                    KARI A. DOOLEY
                                    UNITED STATES DISTRICT JUDGE